SACK, Circuit Judge,
concurring:
I fully concur in Judge Kearse’s opinion for the panel. I write separately only to offer an observation as to one aspect of the panel opinion.
This case is about plaintiff Jason Jackler’s refusal to “make false statements in connection with an investigation into a civilian complaint alleging use of excessive force by a [Middletown Police] Department officer,” ante at 229, and the Town Board of Police Commissioners’ subsequent decision not to hire Jackler — then a probationary police officer — on a permanent basis. The Board allegedly acted at the behest of the defendant officials, who wished to punish Jackler for his refusal to falsify his previously filed report about alleged police misbehavior. In light of the fact that this litigation involves a refusal to speak falsely as directed by a public official, unlike the more common case, see id. at 237-38, where a public employee is sanctioned because he or she spoke in a manner of which government officials disapproved, see id., the panel opinion makes clear that the difference between the two is, for present purposes, immaterial. See id. at 238. I agree.
In support of that proposition, however, the panel quotes this statement by the United States Supreme Court in Riley v. National Federation of the Blind of North Carolina, Inc., 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988):
There is certainly some difference between compelled speech and compelled silence, but in the context of protected speech, the difference is without constitutional significance, for the First Amendment guarantees “freedom of speech,” a term necessarily comprising the decision of both what to say and what not to say.
Id. at 796-97, 108 S.Ct. 2667 (Brennan, J.) (first emphasis supplied); see ante at 238. The panel also quotes Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977): “[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all.” Id. at 714, 97 S.Ct. 1428; see ante at 238.
The Supreme Court made these statements, and the panel invokes them, in response to the argument that compelled speech may receive less protection under the First Amendment than does compelled silence. The panel’s conclusion otherwise does not, however, imply the converse conclusion that compelled speech can never receive more solicitude than compelled silence.
Justice Jackson, speaking for the Court, remarked some time ago that “[i]t would seem that involuntary affirmation could be commanded only on even more immediate and urgent grounds than silence.” W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 633, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) (holding that state-compelled flag salute and pledge violate the First Amendment); see also Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, 515 U.S. 557, 573-74, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (“Outside the context [of commercial speech, the State] may not compel affirmance of a belief with which the speaker disagrees.... This general rule ... applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid.... ”).
*246 I write only to note the possibility that despite the notion of equivalence reflected in the panel opinion and the Supreme Court opinions from which it quotes, it is possible that in some circumstances not before us today, government compulsion to speak (or indeed to act) may well be more strictly limited than government compulsion not to speak (or act [1]).
The Soviet purge trials of the 1930’s remain notorious in large measure because they were marked by “confessions ... made under pressure of intensive torture and intimidation,” 9 New Encyclopaedia Britannica Micropaedia 808 (15th ed.2002), available at http://www. britannica.com/EBchecked/topic/48S9S6/ purge-tñals (latest visit July 11, 2011). And it seems unlikely that Galileo’s dispute with Church authorities about Copernican theory, see Dava Sobel, Galileo’s Daughter 231-81 (1999); Jerome J. Lang-ford, Galileo, Science and the Church 152-54 (3d ed.1992), would be as infamous had he been forbidden to assert — as he apparently believed — that the earth moves about the sun, rather than forced to state publicly and contrary to his conviction that the sun revolves around the earth.[2]

. Cf., e.g., Cacchillo v. Insmed, Inc., 638 F.3d 401, 405-06 (2d Cir.2011) ("The burden [for obtaining an injunction] is even higher on a party like [the appellant] that seeks 'a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo.' " (citation omitted)); Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir.2008) (characterizing the standard for mandatory injunctions as "more rigorous” than that for prohibitory injunctions); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2942 (2d ed.1995) (“It has been said that courts are more reluctant to grant a mandatory, or affirmative, injunction than a prohibitory, or negative, one.”).

. See Recantation of Galileo (June 22, 1633), http://law2.umkc.edu/faculty/projects/ftrials/ galileo/recantation.html (latest visit July 19, 2011) (reproducing Galileo’s attestation from Giorgio de Santillana, The Crime of Galileo 312-13 (1955)).