NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALEKSANDR L. YUFA,**
*Plaintiff-Appellant*

**v.**

**HACH ULTRA ANALYTICS, INC.,**
*Defendant-Appellee*

**DOE 1-10,**
*Defendant*

---

2015-1626

---

Appeal from the United States District Court for the District of Oregon in No. 1:09-cv-03022-PA, Senior Judge Owen M. Panner.

---

Decided: November 5, 2015

---

ALEKSANDR L. YUFA, Colton, CA, pro se.

DAVID G. MANGUM, Parsons Behle & Latimer, Salt Lake City, UT, for defendant-appellee. Also represented by BRANDON J. MARK, C. KEVIN SPEIRS.

---

Before PROST, *Chief Judge,* REYNA, *Circuit Judge*, and STARK, *Chief District Judge.*[*]

PER CURIAM.

Dr. Aleksandr Yufa appeals from a district court's grant of summary judgment in favor of Hach Ultra Analytics, Inc., ("Hach") on both Dr. Yufa's patent infringement and emotional distress claims. Because we find no error in the district court's decision, we *affirm*.

BACKGROUND

Dr. Yufa is inventor and owner of U.S. Patent Nos. 6,034,769 and 6,346,983. Both patents claim methods and devices for determining the number and size of particles in fluids. Dr. Yufa, acting on his own behalf as a pro se litigant, has asserted the '769 and '983 patents against a number of parties, resulting in three prior appeals to this court.[1]

Dr. Yufa's patents describe prior art particle detectors that use light scattering techniques. *See* '769 patent, 2:4-13; '983 patent, 2:8-28. Light scattering detectors shine light through a fluid sample containing particles of various sizes. As light hits a particle, the light scatters, or reflects off the particle. The amount of light scattered is related to the number and size of particles in the sample.

---

[*] The Honorable Leonard P. Stark, Chief District Judge, United States District Court for the District of Delaware, sitting by designation.

[1] *Yufa v. TSI, Inc.*, 600 F. App'x 747 (Fed. Cir. 2015) *cert. denied*, 135 S. Ct. 1868, 191 L. Ed. 2d 727 (2015) *reh'g denied*, 135 S. Ct. 2345, 191 L. Ed. 2d 1002 (2015); *Yufa v. Lockheed Martin Corp.*, 575 F. App'x 881 (Fed. Cir. 2014) *cert. denied*, 135 S. Ct. 955, 190 L. Ed. 2d 831 (2015) *reh'g denied*, 135 S. Ct. 1486, 191 L. Ed. 2d 423 (2015); *In re Yufa*, 452 F. App'x 998 (Fed. Cir. 2012).

A sensor measures the intensity of the scattered light and outputs an analog electrical current with a voltage proportional to the measured intensity. The current is then amplified and processed into a digital signal to determine the number and size of particles in the sample.

The prior art detectors described in Dr. Yufa's patents use a well-known method to process the (amplified) analog electrical current into a digital signal that represents the number and size of particles in the sample. The method involves comparing the analog current voltage with a reference voltage that corresponds to a particular particle size. *See* '769 patent, 3:3-15; '983 patent, 2:18-29. If the detector's voltage output exceeds the reference voltage, indicating that a particle size is larger than the size corresponding to the reference voltage, the detector outputs a digital value of "true." If the detector's voltage output falls below the reference voltage, indicating that a particle size is smaller than the size corresponding to the reference voltage, the detector outputs a digital value of "false." The number of "true" values thus reflects the number of particles with sizes exceeding the size corresponding to the reference voltage. By using multiple reference voltages at different levels (corresponding to different particle sizes), the detector can count the number of particles within different size ranges.

Dr. Yufa's patents discuss problems with using an analog reference voltage. According to the '983 patent, for example, reference voltage methods "create an insufficient signal to noise ratio, thereby limiting the sensitivity and efficiency of the . . . devices." '983 patent, 3:26-28. The '769 patent explains that this "non-precise analog method of comparison" cannot provide "sufficiently high sensitivity" to meet "increasing environmental requirements." '769 patent, 3:16-18. The methods and devices claimed in '769 and '983 patents are described as an improvement over the prior art.

A.  Dr. Yufa's Lockheed Martin Suit and Reexamination

In June 2006, Dr. Yufa sued Lockheed Martin in the Central District of California, alleging infringement of certain claims of the '769 and '983 patents. Lockheed Martin requested that the United States Patent and Trademark Office (PTO) reexamine all claims in the '769 and '983 patents. The PTO ordered reexamination in February 2007, and in March 2007, the district court stayed proceedings pending the PTO's determination.

Certain claims of both patents survived reexamination. To overcome prior art rejections made during reexamination, however, Dr. Yufa amended claims of each patent to require that the particle detector *not* use a reference voltage. Method claim 1 of the '769 patent was amended to recite the step of "converting each amplified signal to a digital form . . . *without using a reference voltage* . . . ." J.A. 82 ('769 patent reexamination certificate) (emphasis to amendment in original). Claims 4-6 were similarly amended. Surviving apparatus claims 6-8 of the '983 patent were amended to require "conversion of each of said voltage value signals to a digital form *pulse without using a reference voltage to convert each of said voltage value signals*." J.A. 54 ('983 patent reexamination certificate) (emphasis to amendment in original). The district court action resumed, and Dr. Yufa amended his complaint to allege infringement of the reexamined claims.

In October 2013, Lockheed Martin moved for summary judgment of noninfringement with respect to all accused products. This motion was based in part on Lockheed Martin's argument that the evidence could not support a finding of infringement because certain accused products did not operate without a reference voltage, as claims of the '769 and '983 patents require. After reviewing these accused products, the district court agreed with Lockheed Martin, finding that the relevant products use a

reference voltage to convert analog current into a digital signal. The district court granted the motion for summary judgment on December 23, 2013, and entered final judgment on January 23, 2014. Dr. Yufa appealed, and this court affirmed the district court's decision in a nonprecedential opinion. *Yufa*, 575 F. App'x at 881.

## B. Dr. Yufa's Parallel Suit Against Hach

On March 5, 2009, Dr. Yufa filed a parallel suit against Hach in the District of Oregon, again alleging infringement of the '769 and '983 patents. As in the Lockheed case, the district court stayed the action pending PTO reexamination proceedings. Once the district court action resumed, Dr. Yufa amended his complaint to allege infringement of claims surviving reexamination, i.e., claims 1 and 4-6 of the '769 patent and claims 6-8 of the '983 patent. Dr. Yufa accused Hach particle counters sold under the MET ONE brand (all models in the R4500 series, the R4803, R4805, R4815, R4903, R4905, R4915, and all models in the 7000 series) and particle counters sold under the HIAC brand (the PM4000, 8000A, and 9705), as well as two other devices known as the HLRD series and the MicroCount 05. Dr. Yufa also alleged emotional distress caused by Hach allegedly misrepresenting his achievements as its own achievements.

Hach moved for summary judgment on all of Dr. Yufa's claims. To support this motion, Hach submitted a declaration by Kenneth Girvin, a senior optical engineer at Hach. Mr. Girvin stated that each of the accused particle counters sold under the MET ONE and HIAC brands uses "a predetermined reference voltage as part of the process of converting a light detector's amplified output into a digital signal." J.A. 385, 387. As for the HLRD series and MicroCount 05, Mr. Garvin stated in his declaration that these products are optical sensors, not particle counters. J.A. 388.

On the basis of Mr. Girvin's declaration, Hach argued that the evidence could not support a finding of infringement or emotional distress. With respect to the MET ONE and HIAC brand particle counters, Hach explained that in the Lockheed case, the district court determined that the asserted claims of the '769 and '983 patents do not cover products that use a reference voltage, and thus the doctrine of issue preclusion prevents Dr. Yufa from relitigating the matter in this case. As for the HLRD series and MicroCount 05, Hach argued that the evidence could not support a finding that these products were particle counters at all. Finally, Hach argued that Dr. Yufa's emotional distress claim depended on his patent infringement claims and thus should fall with those claims, or alternatively that Dr. Yufa's emotional distress claim was insufficient under Oregon law.

On May 30, 2014, the district court granted Hach's motion for summary judgment. As for the HLRD series and the MicroCount 05, the district court found that the evidence showed that these products were not particle counters at all and thus could not be a basis for infringement. The court further found that one accused particle counter sold under the MET ONE brand, the R4805, was also one of the accused products in the Lockheed case, and thus Dr. Yufa was precluded from litigating the issue of infringement based on an identical particle counter. As for the remaining accused particle counters, the district court explained that because "a close identity exists between the relevant features of the accused device" and the device involved in the previous action, issue preclusion bars Dr. Yufa's infringement claims based on those particle counters. J.A. 9 (quoting *Yingbin-Nature (Guangdong) Wood Indus. Co., Ltd. v. Int'l Trade Comm'n*, 535 F.3d 1322, 1333 (Fed. Cir. 2008)). The court therefore found the issue before it "identical, or nearly identical, to the issue previously decided by the Lockheed Court." J.A. 10.

As for Dr. Yufa's emotional distress claim, the court found that Dr. Yufa's allegations fell short of demonstrating "outrageous in the extreme" conduct required by Oregon law. J.A. 12 (quoting *Rockhill v. Pollard*, 259 Or. 54, 60 (1971)). Dr. Yufa's appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).[2]

## DISCUSSION

The district court's determination that Dr. Yufa's infringement claims are barred by issue preclusion, and its grant of summary judgment, are questions of law reviewed de novo. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1371 (Fed. Cir. 2013); *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1323 (Fed. Cir. 2008). Dr. Yufa challenges two aspects of the district court's judgment on appeal: first, whether the issue decided in the Lockheed case is sufficiently similar for issue preclusion to bar Dr. Yufa's infringement claims against Hach; and second, whether the district court properly granted summary judgment on Dr. Yufa's emotional distress claim.

## A. Issue Preclusion

We find no error in the district court's application of issue preclusion. Issue preclusion serves "to bar the revisiting of 'issues' that have been already fully litigated." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366

---

[2]    On December 27, 2012, Hach filed counterclaims, requesting, among other relief, declaratory judgment that the '769 and '983 patents are invalid or not infringed. After the district court granted summary judgment in Hach's favor, Hach moved to voluntarily dismiss the counterclaims. To ensure a final, appealable judgment, *see Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290, 1293 (Fed. Cir. 2005), the district dismissed the counterclaims without prejudice on July 7, 2014.

(Fed. Cir. 2000). Four requirements must be met for a second suit to be barred by issue preclusion: (1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) determination of the issues was necessary to the resulting judgment; and (4) the party defending against preclusion had a full and fair opportunity to litigate the issues. *Id.* (citing numerous authorities).

Dr. Yufa challenges only the district court's application of the first requirement, i.e., the identity of issues, and only as the requirement applies to certain particle counters. Dr. Yufa does not dispute the district court's conclusion that two accused products, the HLRD series and the MicroCount 05, are not particle counters and thus cannot infringe the '769 or '983 patents. Nor does Dr. Yufa address the district court's conclusion that issue preclusion bars infringement claims based on Hach's MET ONE R4805 product because the same product was involved in the Lockheed case. Dr. Yufa disputes only the district court's application of issue preclusion to claims based on the remaining accused products.

As for those accused products disputed on appeal, we find that the district court correctly concluded Dr. Yufa did not raise an issue of triable fact in response to Hach's properly supported summary judgment motion. In response to Hach's motion, Dr. Yufa cannot rest on "mere allegations, but must set forth by affidavit or other admissible evidence specific facts" showing a genuine issue for trial. *Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1255–1256 (9th Cir. 2008) (internal quotations omitted); *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1337 (Fed. Cir. 2010). Mr. Girvin's declaration supporting Hach's motion stated that all accused particle counters used a reference voltage. Acknowledging that Dr. Yufa disputed this evidence, the district court explained that Dr. Yufa made "only conclusory allegations and bare assertions in support of his arguments." J.A. 10. Mere

denials or conclusory statements are insufficient to survive summary judgment. *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984). The district court therefore granted summary judgment that Hach's particle counters cannot be the basis for infringement.

Dr. Yufa's arguments to the contrary are unpersuasive. Dr. Yufa contends that some accused products convert analog signal to digital form without using a reference voltage. Dr. Yufa's arguments appear to be based on two accused products sold under the HIAC brand, the 9705 and the PM4000. Much of the record evidence concerning these products is confidential. The record evidence, however, establishes that both HIAC devices use a reference voltage. Dr. Yufa has not met his burden to point to record evidence from which a jury could reasonably conclude otherwise. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1578 (Fed. Cir. 1994). Given the absence of a material dispute about whether the accused products use a reference voltage, we agree with the district court that there is identity of issues between this and the prior proceeding. We therefore affirm the district court's grant of summary judgment of noninfringement based on issue preclusion.

## B. Emotional Distress

Dr. Yufa contends that the district court erred in granting summary judgment on his emotional distress claim because the district court did not consider Dr. Yufa's allegation that Hach misrepresented Dr. Yufa's invention as its own. According to Dr. Yufa, the district court incorrectly characterized the emotional distress claim as based solely on alleged patent infringement.

We conclude that the district court's grant of summary judgment on Dr. Yufa's emotional distress claim was proper. To the extent that Dr. Yufa's claim was based on alleged patent infringement, the claim falls with the

court's summary judgment of noninfringement. Even assuming Dr. Yufa is correct that his claim was also based on Hach's alleged misrepresentation, and this argument was not waived in district court,[3] Dr. Yufa's claim cannot survive summary judgment. Dr. Yufa set forth no specific facts establishing a triable issue regarding Hach's alleged misrepresentation. Nor do we find facts in the record that, if assumed true, would benefit Dr. Yufa's claim. In short, Dr. Yufa's misrepresentation theory amounts to no more than a bare allegation. More was required to overcome Hach's motion arguing that the emotional distress claim is insufficient under Oregon law. *See Barmag Barmer*, 731 F.2d at 836. We therefore affirm the district court's grant of summary judgment on Dr. Yufa's emotional distress claim.

CONCLUSION

We affirm the judgment below in all respects.

**AFFIRMED**

---

[3]    The district court concluded that Dr. Yufa "concedes that his claim for intentional infliction of emotional distress relies entirely upon his claims for patent infringement." J.A. 12. Because we cannot find this concession in the record, we give Dr. Yufa's misrepresentation argument the benefit of the doubt.