**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GARY GERLINGER, individually and
on behalf of all others similarly
situated,
        *Plaintiff-Appellant,*

v.

AMAZON.COM INC.; BORDERS GROUP,
INC.,
        *Defendants-Appellees.*

No. 05-17328

D.C. No.
CV-02-05238-MHP

OPINION

Appeal from the United States District Court
for the Northern District of California
Marilyn H. Patel, District Judge, Presiding

Argued and Submitted
November 8, 2007—San Francisco, California

Filed May 27, 2008

Before: Mary M. Schroeder, Jay S. Bybee, Circuit Judges,
and George H. Wu,* District Judge.

Opinion by Judge Schroeder

---

*The Honorable George H. Wu, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Roy A. Katriel, Washington, D.C., for the plaintiff-appellant.

Joel Sanders, San Francisco, California, for defendant-appellee Amazon.com.

Reginald Steer, San Francisco, California, for defendant-appellee Borders Group.

## OPINION

SCHROEDER, Circuit Judge:

The plaintiff, Gary Gerlinger, like so many of us, purchases books and related items online. He filed this antitrust action to challenge a marketing agreement between Amazon.com Inc., an online bookseller, and Borders Group, Inc., a brick-and-mortar bookseller. He appeals the district court's dismissal for lack of standing. We agree with the district court that the plaintiff lacks standing because he did not show that he ever purchased an item for a higher price than he would have paid had there been no marketing agreement and thus has suffered no injury-in-fact.

The district court published an earlier opinion discussing the nature of the suit. *See Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838 (N.D. Cal 2004). We therefore do not belabor the facts.

Gerlinger is a customer of Amazon.com. The agreement he challenges was entered into on April 10, 2001, between Amazon and Borders. Borders had previously, and unsuccessfully, attempted to operate its own website. Under the agreement, Borders' website address directs shoppers to what is known as a mirror website, a site hosted by Amazon. The books purchased through the mirror site are sold and shipped by Amazon, and Borders receives a commission for each book sold. The agreement enables Borders to tap the online market and Amazon to expand its customer base to include customers loyal to the Borders brand.

As part of the agreement, Borders abandoned its direct participation in the online market and agreed that it would not reenter the market during the term of the agreement. Gerlinger challenges this aspect of the agreement as per se market allocation in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The defendants moved for summary judgment or in the alternative for summary adjudication, and plaintiff moved for judgment on the pleadings. The defendants' motion was supported by the declaration of Steven Kessel, an Amazon Vice President, showing that the prices for books on the Amazon website actually declined after the defendants entered into the agreement. The Kessel declaration identified five specific instances in which Amazon lowered its pricing after it entered into the agreement with Borders. Upon reviewing this evidence, the district court ordered the parties to file supplemental briefs addressing Gerlinger's standing. *Gerlinger*, 311 F. Supp. 2d at 857.

The defendants filed additional declarations of Amazon employees, which showed that the prices Gerlinger paid for books purchased from Amazon after the agreement became

effective were the same, or even lower, than the prices listed before the defendants entered into the agreement. These declarations listed the prices at which Gerlinger purchased the books and the prices for which those same books sold before the defendants signed the agreement.

Gerlinger sought leave to depose Steven Kessel. In response, the district court issued an order inviting him to file a 5-page brief explaining how Kessel's testimony would show that Gerlinger had suffered an injury. Gerlinger declined to file this brief. Instead, he asserted that prices would have been even lower if there had been no agreement, submitted academic articles, and rested on his pleadings, arguing that the court could not determine whether he had suffered an injury until it reached the damages stage. The district court dismissed Gerlinger's antitrust claims with prejudice.

**[1]** The issue is one of Article III standing, which is a jurisdictional prerequisite to the consideration of any federal claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1425 (9th Cir. 1995). Article III standing requires proof of injury-in-fact, causation, and redressability. *Allen v. Wright*, 468 U.S. 737, 750 (1984). For Article III purposes, an antitrust plaintiff establishes injury-in-fact when he "has suffered an injury which bears a causal connection to the alleged antitrust violation." *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996); *accord Kochert v. Greater Lafayette Health Servs.*, 463 F.3d 710, 714-15 (7th Cir. 2006).

**[2]** Here, in their summary judgment motion, the defendants submitted evidence that the plaintiff suffered no injury-in-fact. In response to a summary judgment motion or a trial court's post-pleading stage order to establish Article III standing, a plaintiff can no longer rest on "mere allegations" but must set forth by affidavit or other admissible evidence "specific facts" as delineated in Federal Rule of Civil Procedure 56(e) as to the existence of such standing. *Lujan*, 506 U.S. at

561. In his complaint, Gerlinger alleged that as a result of the marketing agreement, he was "forced to pay supra-competitive prices for [his] purchases." The defendants' evidence showed this was not the case. In the face of that evidence, Gerlinger needed to show some injury. It became Gerlinger's burden, in order to defeat the motion, to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Gerlinger failed to satisfy his burden to establish a genuine issue as to whether he suffered an injury-in-fact. Although Gerlinger asked for supplemental discovery to depose Kessel, Gerlinger did not respond to the district court's invitation to explain why he needed the discovery. The academic articles he submitted did not establish that Gerlinger personally paid a higher price for a book as a result of the agreement. Nor did he show or even allege that he himself experienced any reduced selection of titles, poorer service or any other potentially conceivable form of injury. He therefore lacks standing to maintain an antitrust claim for alleged market allocation.

In addition to providing that Borders would not sell books online, the agreement also specified that Amazon would not charge customers of the mirror site higher prices than Amazon charged to customers of its own site. The plaintiff attacks this provision as per se price fixing, also in violation of Section 1 of the Sherman Act. On the merits, the district court observed that this was not a per se violation, *see Gerlinger*, 311 F. Supp. 2d at 848, and indeed it looks very much like a lawful joint venture or a licensing agreement to share brand names. We do not reach the merits, however, because the plaintiff has not shown any injury-in-fact caused by the agreement, and he therefore lacks Article III standing to bring this claim as well. He has not shown that he paid higher prices after the agreement than he would have paid otherwise. The district court properly dismissed the claim because plaintiff lacked Article III standing to pursue a claim of price fixing.

The district court went on to discuss antitrust standing, which limits the availability of antitrust damages to those

plaintiffs who suffered the type of harm resulting from the kind of conduct Congress intended to eliminate when it passed § 4 of the Clayton Act. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 538 (1983). Antitrust standing is distinct from Article III standing. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999). Article III standing is required to establish a justiciable case or controversy within the jurisdiction of the federal courts. Antitrust standing is a requirement for treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15. *See Associated Gen. Contractors*, 459 U.S. at 535 & n. 31. Lack of antitrust standing affects a plaintiff's ability to recover, but does not implicate the subject matter jurisdiction of the court. *Datagate, Inc.*, 60 F.3d at 1425 n.1. Accordingly, because Gerlinger failed to establish Article III standing, it is neither necessary nor appropriate for us to reach any questions of antitrust standing.

The district court's judgment dismissing the action for a lack of Article III standing is **AFFIRMED**.