**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| GEORGE JONES, an individual, | No. 22-55489 |
| *Plaintiff-Appellant,* | D.C. No. |
| v. | 2:21-cv-04547-MCS-GJS |
| L.A. CENTRAL PLAZA LLC, a California limited liability company; CENTRAL LIQUOR & MARKET, INC., a California corporation; and DOES, 1–10, | OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted December 7, 2022
Pasadena, California

Filed July 26, 2023

Before: Milan D. Smith, Jr., Daniel P. Collins, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge Collins

# SUMMARY[*]

## Americans with Disabilities Act / Standing

The panel vacated the district court's *sua sponte* dismissal of George Jones's action under the Americans with Disabilities Act against L.A. Central Plaza LLC and Central Liquor & Market, Inc., and remanded for further proceedings.

After Jones moved for summary judgment on the merits, the district court instead *sua sponte* dismissed the case on the ground that Jones's amended complaint failed adequately to plead the elements of Article III standing. Defendants' opposition to Jones's motion had argued, in the alternative, that the case should be dismissed for lack of jurisdiction because Jones failed adequately to show Article III standing. In his reply, Jones had argued that he had sufficiently established standing.

The panel held that, because Jones had a full and fair opportunity to prove his case as to standing, the district court had discretion, in resolving Jones's summary judgment motion, to also consider *sua sponte* whether to grant summary judgment against Jones on the issue of standing. The panel held, however, that when presented with the issue of standing in the context of Jones's fully briefed summary judgment motion, the district court could not ignore the factual evidence of standing presented at summary judgment and instead *sua sponte* examine the adequacy of the complaint's allegations of standing.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Lauren R. Davis (argued) and Anoush Hakimi, The Law Office of Hakimi & Shahriari, Los Angeles, California; Cody Robert Cooper, Hakimi & Shahriari, Encino, California; for Plaintiff-Appellant.

Stephen E. Abraham (argued), Law Offices of Stephen Abraham, Newport Beach, California, for Defendant-Appellee.

**OPINION**

COLLINS, Circuit Judge:

Plaintiff-Appellant George Jones sued Defendants-Appellees L.A. Central Plaza LLC and Central Liquor & Market, Inc. for alleged violations of the Americans with Disabilities Act ("ADA"). After Jones moved for summary judgment on the merits, the district court instead *sua sponte* dismissed the case on the ground that Jones's amended complaint had failed adequately to plead the elements of Article III standing. Jones timely appealed the dismissal. We vacate and remand for further proceedings.

**I**

In his operative first amended complaint, Jones alleges that he is disabled within the meaning of the ADA due to a stroke-induced loss of function on the left side of his body. He asserts that, on two occasions in early 2021, he visited the "One Stop Liquor" shop on Central Avenue in Los Angeles and encountered a variety of barriers to access that

he contends violated the ADA.  He seeks injunctive relief, attorneys' fees, and costs.

In February 2022, Jones moved for summary judgment on his ADA claim.  As a plaintiff seeking summary judgment, Jones had the obligation to establish that there was "no genuine dispute as to any material fact" regarding his Article III standing and that he was "entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Consequently, he "was on notice of the need to come forward with all [his] evidence in support of this motion," including on the issue of standing, "and [he] had every incentive to do so." *Nozzi v. Housing Auth. of L.A.*, 806 F.3d 1178, 1200 (9th Cir. 2016) (simplified) (quoting *Albino v. Baca*, 747 F.3d 1162, 1177 (9th Cir. 2014) (en banc)).  Although Defendants did not file a formal cross-motion for summary judgment, their opposition to Jones's motion specifically argued, in the alternative, that the case should be dismissed for lack of jurisdiction because Jones had failed adequately to show Article III standing.  In his reply in support of his summary judgment motion, Jones argued that he had sufficiently established standing and that, indeed, "there can be no genuine dispute that [he] has standing." Because Jones thus "had a full and fair opportunity to prove [his] case" as to standing, the district court had discretion, in resolving Jones's summary judgment motion, to also consider *sua sponte* whether to grant summary judgment *against* Jones on the issue of standing.  *See Nozzi*, 806 F.3d at 1199 (citation omitted).

But the district court declined to decide whether either side was entitled to summary judgment on the issue of standing.  Instead, the district court *sua sponte* addressed whether the *allegations* of Article III standing in Jones's

operative complaint were sufficient to satisfy the applicable pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523–25 (9th Cir. 2023) (noting that, under *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), "[a]t the pleading stage, plaintiffs must clearly allege facts demonstrating each element" of Article III standing and that the *Iqbal* pleading standards therefore apply in assessing the facial adequacy of allegations of standing (simplified)); *see also Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1092 (9th Cir. 2020) (same).[1]  Concluding that those allegations were insufficient, the district court held that it "must dismiss the first amended complaint."

Having done so, the court then *sua sponte* considered, and denied, a hypothetical request by Jones for "leave to amend his complaint."  Because the deadline to amend the complaint under the court's Rule 16 pretrial scheduling order had long passed, the district court held that the stricter standards of Rule 16, rather than the more permissive

---

[1] We have distinguished between "facial" and "factual" challenges to jurisdictional allegations in a complaint.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  In a factual challenge, the moving party "introduc[es] evidence outside the pleadings" and seeks to have the existence of jurisdiction determined as a factual matter.  *Id*.  In a facial challenge, by contrast, the moving party "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Id*. (citation omitted).  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)."  *Id*.  As *Winsor* and *Namisnak* implicitly recognized in applying *Iqbal*'s pleading standards in evaluating facial challenges to standing allegations, our previous suggestion that *Iqbal* does not apply in that context, *see Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011), is clearly irreconcilable with *Spokeo*.  *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).  It is thus no longer good law.

standards of Rule 15, governed any amendment of the complaint. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Concluding that those stricter standards could not be met, the district court denied leave to amend the complaint and dismissed the action without prejudice. The court consequently denied Jones's summary judgment motion as moot.

## II

"We review district court decisions to dismiss for lack of subject matter jurisdiction de novo." *Hacienda Valley Mobile Ests. v. City of Morgan Hill*, 353 F.3d 651, 654 (9th Cir. 2003). The question in this case is whether, when presented with the issue of standing in the context of a plaintiff's fully briefed summary judgment motion, a district court may ignore the factual evidence of standing presented at summary judgment and instead *sua sponte* examine the adequacy of the complaint's allegations of standing under *Iqbal*. We hold that it cannot.

## A

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). These elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, at the pleadings stage, the

plaintiff must allege sufficient facts that, taken as true, "demonstrat[e] each element" of Article III standing. *Spokeo*, 578 U.S. at 338 (citation and internal quotation marks omitted). If the plaintiff fails to do so, the complaint is subject to dismissal at the outset either upon motion by the defendant under Federal Rule of Civil Procedure 12(b)(1) or upon the court's own inquiry. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (holding that, because "[t]hey keep the federal courts within the bounds the Constitution and Congress have prescribed," questions concerning subject matter jurisdiction "must be policed by the courts on their own initiative even at the highest level"); *see also* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").[2]

---

[2] As we have noted, *see supra* note 1, a defendant in an appropriate case may instead assert, at the outset, "a *factual* attack on subject matter jurisdiction in its motion to dismiss" under Rule 12(b)(1). *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1029 (9th Cir. 2023) (emphasis added) (citation and internal quotation marks omitted). "Where the jurisdictional issue is separable from the merits of the case," a court presented with such a factually-based motion to dismiss "may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Id*. at 1028 (quoting *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). However, resolving an Article III standing issue under the guise of a Rule 12(b)(1) motion, rather than a summary judgment motion under Rule 56, may be inappropriate if those jurisdictional issues are "intertwined with the merits." *See Wood v. City of San Diego*, 678 F.3d 1075, 1083–84 (9th Cir. 2012) (noting the plaintiffs' "substantial arguments" that reliance on Rule 12(b)(1) is improper in such a context, but finding it unnecessary to resolve the issue); *cf. also Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1255–56 (9th Cir. 2008) (addressing an issue of Article III injury, which was intertwined with the merits of plaintiff's alleged antitrust violation, under summary judgment standards).

If the complaint's factual allegations of Article III standing are found to be adequate under *Iqbal* or are not challenged at the outset by either the parties or the court, then "the case advances to discovery for the parties to marshal evidence supporting their claims and defenses." *Dupree v. Younger*, 598 U.S. 729, 731 (2023). "During or after that process, either party can move for summary judgment under Rule 56, which requires a district court to enter judgment on a claim or defense if there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. (quoting FED. R. CIV. P. 56(a)). Because, as noted earlier, the elements of Article III standing must be substantiated "with the manner and degree of evidence required at the successive stages of the litigation," *Lujan*, 504 U.S. at 561, it follows that, "at the summary judgment stage, a plaintiff must offer evidence and specific facts demonstrating each element" of Article III standing. *Center for Biological Diversity v. Export-Import Bank*, 894 F.3d 1005, 1012 (9th Cir. 2018). Likewise, when confronted with a district court's *sua sponte* "post-pleading stage order to establish Article III standing, a plaintiff can no longer rest on 'mere allegations' but must set forth by affidavit or other admissible evidence 'specific facts' as delineated in Federal Rule of Civil Procedure 56(e) as to the existence of such standing." *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008) (quoting *Lujan*, 504 U.S. at 561).

Here, the parties presented the issue of Article III standing to the court in the context of a summary judgment motion, and they based their arguments on the evidentiary materials in the summary judgment record. However, rather than resolve the question actually presented by the parties as to whether Jones had adequately established standing with factual evidence under summary judgment standards, the

district court *sua sponte* decided to examine the adequacy of the complaint's allegations of Article III standing under *Iqbal*'s pleading standards. For the reasons we explain in the next section, the district court erred.

**B**

In our adversary system, it is generally up to the parties to decide, within the parameters of the applicable procedural rules, what particular relief they wish to seek, what type of motion they wish to present to obtain that relief, and which arguments they wish to make in support. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579, 1581–82 (2020); *Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008). There are, however, several respects in which the Federal Rules allow the district court, with appropriate notice, to raise issues *sua sponte* and even to convert the form of the motion that a party has chosen to present to the court. For example, as already noted, a jurisdictional issue such as Article III standing may be raised *sua sponte* by the court at any time. *See* FED. R. CIV. P. 12(h)(3). In addition, "[a]fter giving notice and a reasonable time to respond," a court may "grant summary judgment for a nonmovant"; grant a summary judgment motion "on grounds not raised by a party"; or even ask the parties, in the absence of a motion, to address the propriety of granting summary judgment on grounds "identif[ied]" by the court. FED. R. CIV. P. 56(f)(1)–(3). Moreover, when presented with "matters outside the pleadings" in connection with a motion to dismiss for failure to state a claim under Rule 12(b)(6) or for judgment on the pleadings under Rule 12(c), the district court may choose to exclude such extrinsic matters and address the motion under the applicable Rule 12 standards, or it may convert the motion into "one for summary judgment under Rule 56." *See* FED. R. CIV. P. 12(d) (noting that, if the court converts

the motion to a summary judgment motion, the court must afford all parties "a reasonable opportunity to present all the material that is pertinent to the motion").

But unlike a situation in which a party's motion under Rule 12 is converted into a summary judgment motion, *see* FED. R. CIV. P. 12(d), here the district court effectively did the converse: the court converted a summary judgment motion addressed to the adequacy of the evidence of standing into a *motion to dismiss* addressed to the adequacy of the complaint's allegations of standing.  As the First Circuit has noted in confronting an analogous situation, "the Federal Rules of Civil Procedure offer no support for a conversion such as was undertaken by the district court." *Ríos-Campbell v. U.S. Dep't of Commerce*, 927 F.3d 21, 25 (1st Cir. 2019) (rejecting a district court's comparable *sua sponte* conversion of a summary judgment motion into a Rule 12(b)(6) motion examining the adequacy of the complaint's allegations under *Iqbal*).  And we further agree with the First Circuit that, "in the mine-run of cases," such a "reverse conversion of a summary judgment motion into a motion to dismiss" is improper.  *Id*. at 25, 26.

In contrast to the conversion of a pleadings motion into a summary judgment motion, a conversion the other way will rarely (if ever) help to "secure the just, speedy, and inexpensive determination" of the action.  FED. R. CIV. P. 1. The former type of procedural conversion allows for a prompt and efficient means of achieving a definitive resolution of a case-dispositive issue based on an evidentiary record that is focused on, and adequate for, that specific purpose.  *See* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366, p.165 (3d ed. 2004) (stating that whether to exercise the discretion to convert a Rule 12(b)(6) motion into a summary judgment

motion generally turns on whether doing so "is likely to facilitate the disposition of the action" on the merits). By contrast, the sort of reverse conversion employed by the district court here contravenes "principles of sound case management" in multiple respects. *Ríos-Campbell*, 927 F.3d at 25. By disregarding the more robust procedural device the parties have invoked to frame the issue, such a reverse conversion unjustifiably ignores the fuller evidentiary record assembled by the parties after they have already incurred the expense of discovery. For similar reasons, one of the chief objectives of the *Iqbal* pleading standards—which is to avoid "unlock[ing] the doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678–79—is largely inapposite by the time of summary judgment. *See Ríos-Campbell*, 927 F.3d at 24 (stating that, after "substantial discovery has taken place" and the parties have filed summary judgment motions, "the plausibility standard [of *Iqbal*] normally becomes a relic of a bygone time").

The potential for thwarting an efficient and just determination of the action is all the more apparent if one considers the practical effect of such a reverse conversion on the outcome of the motion presented. Suppose, for example, that the factual record presented at summary judgment confirms that the *defendant* is entitled to judgment as a matter of law on the issue of standing. Under those circumstances, deciding the summary judgment motion as presented would yield the *same* result as a retrogressive faulting of the complaint's factual allegations of standing, and so nothing is accomplished by declining to honor the parties' choice of the procedural vehicle of summary judgment. But suppose that the summary judgment record shows instead that the *plaintiff* has raised sufficient evidence

of standing to allow—or even to compel—a trier of fact to find in its favor on standing. In *that* situation, dismissing the case based on *Iqbal*-based pleading deficiencies in the complaint's factual allegations would change the outcome in a way that seems difficult to justify. In that scenario, the fruits of the litigation process would have revealed that the pleading deficiency is curable: because the actual facts developed by the parties show that the plaintiff has enough proof to proceed, that evidence would provide a roadmap for curing any overlooked *Iqbal* deficiency in the complaint's factual allegations. What possible justification could there be, in such circumstances, for raising a purely technical pleading deficiency *that the defendant never saw fit to raise*? Had the defendant challenged the adequacy of those factual allegations by a timely motion under Rule 12, those deficiencies presumably could have been cured before the allotted time to amend the pleadings expired. For a district court to ignore the parties' factual presentation on summary judgment, and to instead insist on raising *sua sponte* an unobjected-to-but-potentially-curable deficiency only *after* the time to amend has expired, seems hardly to promote the just determination of the action.

Accordingly, a district's court's *sua sponte* conversion of a summary judgment motion addressing sufficiency of the evidence into a pleadings motion addressing the adequacy of the complaint's factual allegations under *Iqbal* either (1) does not change the ultimate outcome or (2) changes it in a way that seems exceedingly difficult to justify. Either way, it makes little sense not to simply decide the issues as the parties presented them.

Such a reverse conversion of a summary judgment motion into a pleadings motion is even more problematic when, as here, the district court provided no notice to the

parties that it was contemplating doing so. Given the due process and fairness concerns presented, a district court generally must provide the parties with adequate notice that it is contemplating invoking a particular procedural device *sua sponte*. For example, we have held that a district court generally may not *sua sponte* dismiss a complaint under Rule 12(b)(6) unless it first "give[s] notice of its sua sponte intention to invoke Rule 12(b)(6) and afford[s] plaintiffs 'an opportunity to at least submit a written memorandum in opposition to such motion.'" *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981) (citation omitted). And, as we have explained, *see supra* at 9–10, the Federal Rules expressly require that, if a pleadings motion is converted into a summary judgment motion, the district court must afford all parties a "reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d); *see also Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007) (stating that parties must "ha[ve] notice" that the district court may "convert the motion to one for summary judgment"). Given that the sort of reverse conversion at issue here and in *Ríos-Campbell* is even more atypical and unforeseeable, we perceive no justification for applying a different rule and dispensing with advance notice in that context.

Further, the fact that the district court has the power and the obligation to raise jurisdictional issues such as standing *sua sponte*, *see* FED. R. CIV. P. 12(h)(3), does *not* mean that it has discretion, later in the litigation, to retroactively examine the adequacy of the complaint's factual allegations of standing under *Iqbal*. Indeed, we expressly noted in *Gerlinger* that when a court issues a "post-pleading stage order to establish Article III standing," the applicable standards are presumptively those governing *summary*

*judgment motions* rather than those governing motions to dismiss. *Gerlinger*, 526 F.3d at 1256.

In short, when the parties have "briefed and argued summary judgment, . . . judicial efficiency [is] best served by dealing directly with those arguments rather than avoiding them." *Ríos-Campbell*, 927 F.3d at 25. In the ordinary case, there is "no justification for allowing a district court to travel back in time and train the lens of its inquiry on the bare allegations of the complaint while disregarding the compiled factual record upon which a summary judgment movant has elected to rely." *Id*. at 26.

Nothing about the specific circumstances of this case warrants departing from these general principles. If anything, the record confirms the impropriety of the district court's manner of proceeding. In its ruling, the district court itself opined that Jones *had* "provided facts that could demonstrate standing with his motion for summary judgment," but it nonetheless inexplicably chose to ignore those facts and instead to parse the language of Jones's complaint for compliance with *Iqbal*. And the court provided no notice whatsoever that it planned to dispose of the case in this novel and unjustifiable manner.

Given the district court's fundamental procedural errors, we vacate the district court's order dismissing this action and remand the matter for further proceedings consistent with this opinion. In view of our disposition, we need not and do not address the remaining issues raised by the parties on appeal.

**VACATED and REMANDED.**