22-3043
*Lugo v. The City of Troy, New York*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2023

ARGUED: MARCH 4, 2024
DECIDED: AUGUST 27, 2024

Docket No. 22-3043

MOSES LUGO AND CHERYL SEATON,
*Plaintiffs–Appellants,*

*v.*

THE CITY OF TROY, NEW YORK,
*Defendant–Appellee.*

————

Appeal from the United States District Court
for the Northern District of New York.

————

Before: WALKER, NARDINI, AND MENASHI, *Circuit Judges.*

————

Plaintiffs–Appellants Moses Lugo and Cheryl Seaton sued Defendant–Appellee City of Troy, New York under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA"). Plaintiffs, who use motorized wheelchairs, allege that Troy has failed to maintain pedestrian pathways that are accessible to them. After the parties completed discovery, Plaintiffs moved for

summary judgment, and Troy moved to dismiss Plaintiffs' complaint for lack of standing or, alternatively, for summary judgment. The district court (Sharpe, *J*.) dismissed the complaint, finding the factual allegations therein inadequate to establish Plaintiffs' standing. The district court did not consider, however, whether either party was entitled to summary judgment on the issue of standing based on the full summary-judgment record.

On appeal, Plaintiffs argue that the district court erred in resolving the issue of standing based on the pleadings rather than the full summary-judgment record. For the reasons explained below, we agree. We thus **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

————

> CHRISTINA ASBEE, Disability Rights New York, Albany, NY (Jessica Richwalder, Jessica Scholes, *on the brief*), *for Plaintiffs–Appellants Moses Lugo and Cheryl Seaton*.

> THOMAS J. O'CONNOR, Napierski, VanDenburgh, Napierski & O'Connor, LLP, Albany, NY, *for Defendant–Appellee The City of Troy, New York*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiffs–Appellants Moses Lugo and Cheryl Seaton sued Defendant–Appellee City of Troy, New York under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA"). Plaintiffs, who use motorized wheelchairs, allege that Troy

has failed to maintain pedestrian pathways that are accessible to them. After the parties completed discovery, Plaintiffs moved for summary judgment, and Troy moved to dismiss Plaintiffs' complaint for lack of standing or, alternatively, for summary judgment. The district court (Sharpe, *J.*) dismissed the complaint, finding the factual allegations therein inadequate to establish Plaintiffs' standing. The district court did not consider, however, whether either party was entitled to summary judgment on the issue of standing based on the full summary-judgment record.

On appeal, Plaintiffs argue that the district court erred in resolving the issue of standing based on the pleadings rather than the full summary-judgment record. For the reasons explained below, we agree. We thus **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

Plaintiffs–Appellants Moses Lugo and Cheryl Seaton reside in Troy, New York. Due to mobility disabilities, Plaintiffs use motorized wheelchairs to navigate throughout Troy. Plaintiffs brought this action against Defendant–Appellee City of Troy for alleged violations of Title II of the ADA and § 504 of the RA. Plaintiffs claim that Troy has discriminated against them by failing to keep Troy's sidewalks and crosswalks accessible.

In their complaint, Plaintiffs allege that they sustained damages in two separate incidents while using their wheelchairs. On December 16, 2017, Mr. Lugo was traveling on Federal Street when his wheelchair slid into a large pothole in a crosswalk, causing him to be ejected from the wheelchair. During the winter of 2017–18, Ms.

3

Seaton was crossing 4th Avenue near 114th Street when her wheelchair was damaged by hitting a large gap between the sidewalk and the road.

Without identifying other specific locations, Plaintiffs further allege in their complaint that Troy's sidewalks and crosswalks are generally inaccessible to them—and in violation of Title II of the ADA and § 504 of the RA—because of poor maintenance and physical barriers and impediments, including missing or deficient curb cuts and abrupt changes in level and slope. As a result, Plaintiffs "cannot safely access areas of the City of Troy, including the core downtown area." App'x at 15.

After Plaintiffs filed their complaint, the parties conducted discovery for nearly two years. In depositions filed during this period, Plaintiffs testified to having encountered other specific accessibility obstacles around Troy. Mr. Lugo testified that he was forced by the inaccessible pedestrian pathways to turn around on sidewalks and to retrace his journey back to the beginning of the sidewalks so that he could travel along the street to his destination. *Id.* at 1424–25. Mr. Lugo also observed that a curb ramp in front of City Hall was "too small" and that a sidewalk near the Samaritan Hospital was inaccessible. *Id.* at 1425, 1430. Mr. Lugo noted that "[e]verything I have is near me. I don't really have to travel too far . . . for my needs," *id.* at 1426–27, but he also stated in an affidavit that "if I knew I would not face barriers that leave me stuck, damage my wheelchair, cause me physical harm, or force me to use the streets to get from one place to the other," then he "would use the sidewalks and curb cuts throughout the City of Troy," *id.* at 57.

4

Ms. Seaton stated that accessing a restaurant and park in downtown Troy was a "disaster" because of missing ramps, *id.* at 1373–74, and that a ramp leading to a boutique in the same area was too steep, *id.* at 1395. She also complained of a missing ramp on Hoosick Street near two food pantries that she has frequented. *Id.* at 1375–76. Ms. Seaton also testified that she faced challenges accessing the 6th Avenue bus depot. *Id.* at 1387–90. Finally, she testified that she was forced to travel on the street whenever she did not know the state of the sidewalks on her route; otherwise, she risked having to turn around, retrace her path, and end up taking the street anyway—which would waste time and her wheelchair battery life. *Id.* at 1373, 1396–97.

On the other hand, Plaintiffs testified that the two specific obstacles they identified in their complaint had been removed: the pothole on Federal Street was "patched . . . up" and the large gap on 4th Avenue "clear[ed]." *Id.* at 1372, 1421–22.

During discovery, the parties also commissioned architectural consultants to survey the accessibility of dozens of sites throughout Troy. The parties and their respective experts reached competing conclusions as to various sites, including the sites that Plaintiffs deemed inaccessible in their complaint and deposition testimony. Although the parties agree that certain obstacles have been remedied, the parties dispute whether the expert reports show that these sites are now fully accessible and in compliance with ADA standards. *See, e.g.*, *Lugo v. City of Troy, New York*, No. 19-cv-67, ECF No. 81, Attach. 1 ¶¶ 5, 8, 14, 19, 21, 24–25, 28–29.

Following discovery, Plaintiffs moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. As

pertinent here, Plaintiffs argued that there was "no genuine dispute" that the evidence compiled during discovery established Plaintiffs' Article III standing. *See* Fed. R. Civ. P. 56(a). According to Plaintiffs, the summary-judgment record showed that many pedestrian pathways in Troy remain inaccessible, that Plaintiffs are deterred from using these pathways, and that Plaintiffs have therefore experienced an "injury in fact" and a "real and immediate threat of future injury." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74–75 (2d Cir. 2022) (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1233 (11th Cir. 2021)); *see also id.* (noting that to establish standing, an ADA plaintiff seeking injunctive relief must show an injury in fact, including a threat that he will face the same injury in the future).

In response, Troy filed a cross-motion to dismiss Plaintiffs' complaint for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment. Troy argued that Plaintiffs lacked standing because the summary-judgment record showed that most of the specific obstacles that Plaintiffs identified in either their complaint or their depositions had been remedied. Troy also stressed that Mr. Lugo did not demonstrate a "threat of future injury" because he failed to show that he frequented and wished to return to the sites he complained about. *Calcano*, 36 F.4th at 75 (internal quotation marks omitted).

In a Memorandum Decision and Order dated October 27, 2022, the district court granted Troy's motion based solely on the Plaintiffs' complaint. Looking only at the complaint's factual allegations, the district court found them inadequate to establish Plaintiffs' standing, with regard to both the general claims of injury from inaccessibility and their specific claims of injury from their accidents. First, it held that Plaintiffs lacked standing to pursue city-wide remedies because

6

Plaintiffs' "generic allegations" of Troy's overall inaccessibility were too conclusory to establish standing. Special App'x at 8. Second, it held that Plaintiffs lacked standing "and/or their claim is moot" with regard to remedies relating to the two injury sites alleged in the complaint because, as Plaintiffs observed in their depositions, Troy had remedied the specific obstacles that caused their injuries. *Id*. at 9–10. The district court did not consider whether evidence developed during discovery, including deposition testimony in which Plaintiffs identified additional accessibility obstacles throughout Troy, might otherwise establish Plaintiffs' standing.

## DISCUSSION

On appeal, Plaintiffs argue that the district court erred in determining the issue of Article III standing based on the pleadings rather than the full summary-judgment record. Plaintiffs further contend that upon that record, they have standing to pursue this action. We agree that the district court committed procedural error in resolving Troy's standing challenge as a pleadings motion instead of a summary-judgment motion. As such, we do not reach the merits of the standing issue now. Instead, we vacate the judgment of the district court and remand for consideration of the standing issue upon the evidentiary record under the applicable summary-judgment standard.[1]

### I.    Legal Standards

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion*

---

[1] Plaintiffs also argue on appeal that the district court erred in determining their claims were moot. We do not reach this issue because we remand for reconsideration of the standing issue. Mootness is jurisdictional, *see Doyle v.*

*LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting U.S. Const. art. III, § 2). "For there to be a case or controversy under Article III, [a] plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)) (cleaned up). To establish standing, the plaintiff must show that he "has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Furthermore, "because the plaintiffs request forward-looking relief, they must face 'a real and immediate threat of repeated injury.'" *Id*. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

In the ADA context, we have said that a plaintiff adequately alleges injury when "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendant['s] [services] to plaintiff's home, that plaintiff intended to return to the

---

*Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("[W]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action."), and for that reason it must be addressed before a court reaches the merits, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (alteration and citation omitted)). Standing, however, is also jurisdictional, *see All. for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) ("Article III standing . . . [is] a limitation on the authority of a federal court to exercise jurisdiction."), and this court "can address jurisdictional issues in any order we choose, and so have authority to resolve the standing issue," without addressing mootness, *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023) (citation omitted). On remand, if the district court determines that the Plaintiffs have standing, it would need to address all jurisdictional questions before proceeding to the merits.

subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013). This latter prong requires that "the plaintiff plausibly allege[] a real and immediate threat of future injury," if "examined under the totality of all relevant facts." *Calcano*, 36 F.4th at 75 (internal quotation marks omitted). These "relevant facts" include the "definiteness of the plaintiff's plan to return and frequency of the plaintiff's travel near the defendant's business." *Id.* (internal quotation marks omitted). This clarification ensures that any "threatened injury must be *certainly impending*," so that the plaintiff does not rely on mere "allegations of *possible* future injury." *Id.* at 74 (quoting *Am. C.L. Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015)). "[C]onclusory allegations of intent to return and proximity are not enough—in order to 'satisfy the concrete-harm requirement' and to 'pursue forward-looking, injunctive relief,' Plaintiffs must establish a 'material risk of future harm' that is 'sufficiently imminent and substantial.'" *Id.* at 72 (quoting *TransUnion*, 594 U.S. at 435).

A challenge to standing "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)); *see also* Fed. R. Civ. P. 12(h)(3). "At each such stage, 'the party invoking federal jurisdiction bears the burden of establishing the elements' of Article III standing[,] but the stage at which, and the manner in which, the issue is raised affect . . . the obligation of the plaintiff to respond [and] the manner in which the district court considers the challenge . . . ." *Carter*, 822 F.3d at 56 (alterations incorporated) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

At the pleading stage, "the plaintiff must clearly allege facts [in his complaint] demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks omitted and alteration incorporated). "If the plaintiff fails to do so, the complaint is subject to dismissal at the outset either upon motion by the defendant under Federal Rule of Civil Procedure 12(b)(1) or upon the court's own inquiry." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023). To survive a Rule 12(b)(1) motion to dismiss, the complaint's factual allegations of standing must be "plausible" and "nonconclusory." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (applying the pleading standards of *Twombly* and *Iqbal* to a Rule 12(b)(1) motion to dismiss).

A Rule 12(b)(1) motion may be either facial or fact-based. *See Carter*, 822 F.3d at 56. A facial motion is based solely on the pleadings—that is, the allegations of the complaint and any exhibits attached to it. *Id.* The district court must deny such a motion if the plaintiff satisfies the applicable pleading standards discussed above. *Id.* Alternatively, in a fact-based motion, the defendant can proffer evidence outside the pleadings to challenge the plaintiff's allegations of standing. *Id.* at 57. "In opposition to such a motion, the plaintiff[] will need to come forward with evidence . . . controvert[ing] that presented by the defendant" if the defendant's evidence "reveal[s] the existence of factual problems" regarding standing. *Id.* (internal quotation marks omitted). In that scenario, "the district court will need to make findings of fact in aid of its decision as to standing." *Id.*

If the plaintiff's complaint has not been dismissed for lack of standing at the pleading stage, "the case advances to discovery for the

parties to marshal evidence supporting their claims and defenses." *Dupree v. Younger*, 598 U.S. 729, 731 (2023). "During or after that process, either party can move for summary judgment under Rule 56, which requires a district court to enter judgment on a claim or defense," including on standing, "if there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

At the summary-judgment stage, the plaintiff "can no longer rest on [the complaint's] allegations" of standing. *Lujan*, 504 U.S. at 561 (cleaned up). Instead, to demonstrate his entitlement to summary judgment on this issue, the plaintiff must "set forth by affidavit or other evidence specific facts" showing that there is no genuine dispute as to facts that attest to his standing. *Id.* (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c). Conversely, to defeat a defendant's motion for summary judgment on the same issue, the plaintiff must produce evidence showing the *presence* of a genuine issue regarding standing that would warrant resolution by trial. *See* Fed. R. Civ. P. 56(c).

## II.    Analysis

Plaintiffs challenge the procedure used by the district court in determining Article III standing in this case. In Plaintiffs' view, because the parties relied on matters beyond the pleadings to argue their standing motions, the district court should have decided whether Plaintiffs had standing by examining the full summary-judgment record, and not by confining its evaluation to the factual allegations in Plaintiffs' complaint.

"We review district court 'determinations undertaken to manage the litigation before the court' for abuse of discretion." *U.S. Sec. & Exch. Comm'n v. Aronson*, 665 F. App'x 78, 80 (2d Cir. 2016) (summary order) (alteration incorporated) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013) (per curiam)). This includes the district court's decision in this case to apply a pleading standard instead of a summary-judgment standard, notwithstanding the completion of discovery, to resolve the issue of standing. For the reasons set forth below, we think that the district court overstepped its discretion.

The Federal Rules of Civil Procedure guide litigants and federal courts toward "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. To that end, the Rules allow the district court, in certain situations, "to convert the form of the motion that a party has chosen to present to the court." *Jones*, 74 F.4th at 1058. For example, under Rule 12(d), if a party presents "matters outside the pleadings" to the district court on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court can choose either to exclude such matters and resolve the motion based on the pleadings, or else to consider such matters and thus convert the motion into "one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The choice to convert a motion "generally turns on whether doing so 'is likely to facilitate the disposition of the action' on the merits." *Jones*, 74 F.4th at 1059 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 165 (3d ed. 2004)).

The district court's actions here, however, most resemble a *reverse* Rule 12(d) conversion. To explain, we briefly summarize the procedural history discussed above. Troy styled its attack on

standing as *both* a fact-based Rule 12(b)(1) motion to dismiss and a Rule 56 motion for summary judgment. As to the former, Troy sought to impugn Plaintiffs' complaint allegations concerning the two injury sites with evidence outside the pleadings, namely, Plaintiffs' observations during their depositions that the obstacles at those sites had been removed. And regarding the latter, Troy argued it was entitled to summary judgment because nothing in the summary-judgment record—including Plaintiffs' deposition testimony identifying additional accessibility obstacles throughout Troy—otherwise established Plaintiffs' standing. But in resolving Troy's challenge, the district court largely ignored the summary-judgment record. It considered only whether the *allegations* of standing in Plaintiffs' complaint satisfied the pleading standards set forth in *Twombly* and *Iqbal*. It declined to credit the alleged obstacles in the complaint either because they were too generic or because Plaintiffs' deposition testimony showed that they had been remedied. It failed to consider, however, whether other evidence outside the pleadings might suffice to establish Plaintiffs' standing.

This was procedural error. As two of our sister circuits have observed, the Federal Rules of Civil Procedure "offer no support" for the sort of reverse Rule 12(d) conversion that the district court undertook here. *See Jones*, 74 F.4th at 1059 (quoting *Ríos-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 25 (1st Cir. 2019)). There are good reasons for this. When a district court resolves a summary-judgment motion as a pleadings motion, it "disregard[s] the more robust procedural device the parties have invoked to frame the issue" and thus "unjustifiably ignores the fuller evidentiary record assembled by the parties." *Id.* And in practice, a reverse Rule 12(d) conversion "will

rarely (if ever) help to 'secure the just, speedy, and inexpensive determination' of the action." *Id.* (quoting Fed. R. Civ. P. 1).

The different standards generally applicable to motions to dismiss and for summary judgment serve distinct purposes, each tailored to addressing the unique considerations that arise at successive stages of the litigation. The pleading standards of *Twombly* and *Iqbal* require a plaintiff's complaint to allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence" of the defendant's wrongdoing. *Twombly*, 550 U.S. at 545. In so doing, the pleading standard acts as a "screening mechanism" in the early stages of the litigation. *Ríos-Campbell*, 927 F.3d at 24 (internal quotation marks omitted). It closes "the doors of discovery" to plaintiffs "armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. But once the parties "have already incurred the expense of discovery," that objective becomes inapposite. *Jones*, 74 F.4th at 1059. After discovery, the summary-judgment standard typically applies, which requires the district court to review the evidence compiled by the parties during discovery "to determine whether trial is actually required." *Ríos-Campbell*, 927 F.3d at 25 (internal quotation marks omitted).

We think that in most cases, including the present one, the administration of justice is best served when the district court applies the standards that are appropriate for the pertinent motion and stage of litigation. Indeed, as the Ninth Circuit has explained, the district court's failure to do so could lead to the erroneous dismissal of a case. *See Jones*, 74 F.4th at 1060 ("[S]uppose that the summary judgment record shows . . . that the *plaintiff* has raised sufficient evidence of standing to allow—or even to compel—a trier of fact to find in its favor on standing. In *that* situation, dismissing the case based on

*Iqbal*-based pleading deficiencies in the complaint's factual allegations . . . seems difficult to justify. In that scenario, the fruits of [discovery] would have revealed that the pleading deficiency is curable . . . ."). The risk of error was compounded here because Troy, like the defendant in *Jones*, did not object to the adequacy of Plaintiffs' pleadings until the summary-judgment stage. Had Troy done so earlier, any deficiencies in Plaintiffs' complaint "presumably could have been cured before the allotted time to amend the pleadings expired." *Id*. Under these circumstances, we agree with the Ninth Circuit that "[f]or a district court to ignore the parties' factual presentation on summary judgment . . . seems hardly to promote the just determination of the action." *Id.*

To recap, we hold that the district court erred in resolving the question of standing—which was raised at the summary-judgment stage—under the standards applicable to a Rule 12 motion to dismiss on the pleadings. And, accordingly, we vacate the district court's judgment. On remand, we anticipate that the district court will need to determine (1) whether Plaintiffs have shown the absence of a genuine dispute as to facts that would establish their standing to pursue relief relating to both the general and specific accessibility obstacles that Plaintiffs identified in the pleadings and the summary-judgment record (or, conversely, whether Troy has shown the same as to facts that would establish Plaintiffs' *lack* of standing); and (2) if summary judgment is warranted *against* Plaintiffs on standing, whether Plaintiffs should be granted leave to replead.

15

**CONCLUSION**

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.