10-4630-cv
*Cacchillo v. Insmed, Inc.*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————————————

August Term, 2010

(Argued: March 15, 2011          Decided: March 23, 2011)

Docket No. 10-4630-cv

———————————————

ANGELINE CACCHILLO,

*Plaintiff-Appellant*,

–v.–

INSMED, INC.,

*Defendant-Appellee.*

———————————————

Before:

WESLEY, CHIN, and LOHIER, JR., *Circuit Judges*.

Appeal from an order of the United States District Court for the Northern District of New York (McAvoy, *J.*) entered on October 22, 2010, denying Plaintiff-Appellant Angeline Cacchillo's motion for a preliminary injunction.

AFFIRMED.

———————————————

KEVIN A. LUIBRAND, Albany, N.Y., *for Plaintiff-Appellant*.

ROBERT P. CHARROW (Laura Metcoff Klaus, Cynthia E.

Neidl, *on the brief*), Greenberg Traurig LLP, Washington, D.C., *for Defendant-Appellee*.

_____

WESLEY, *Circuit Judge*:

Plaintiff-Appellant Angeline Cacchillo appeals from an October 22, 2010 order of the United States District Court for the Northern District of New York (McAvoy, *J.*) denying Cacchillo's motion for a preliminary injunction for lack of standing. For the reasons stated below, we find that Cacchillo has standing to pursue a preliminary injunction and that her claim, contrary to Defendant-Appellee Insmed Inc.'s ("Insmed") suggestion, is ripe for review. We nevertheless AFFIRM because Cacchillo has not met her burden to obtain the preliminary injunction because she has not shown the requisite likelihood of success on the merits.

**Background**

Cacchillo suffers from Type 1 Myotonic Muscular Dystrophy ("MMD1"). From February 2008 to August 2008, Cacchillo took Insmed's drug IPLEX while participating in a clinical trial for MMD1 patients. Cacchillo felt her condition greatly improved while on IPLEX and brought this action in part because she hopes to resume taking IPLEX.

The Food and Drug Administration ("FDA") has not approved IPLEX for general use.  As a result, Cacchillo cannot resume IPLEX treatment unless she receives a special authorization – known as a "compassionate use" exception – from the FDA.  Cacchillo contends that before she may file a compassionate use application, Insmed – as the manufacturer of IPLEX – must provide her with a form to be forwarded to the FDA stating that Insmed will provide Cacchillo with IPLEX in the event her application is approved.  Insmed has refused to participate in this process.  Further complicating matters, IPLEX is no longer produced, only limited stores of IPLEX remain and, according to Insmed, all remaining IPLEX has been committed to patients with amyotrophic lateral sclerosis ("ALS").

Cacchillo asserts that Insmed agreed to support her FDA compassionate use application and is now in breach of that agreement.  Cacchillo commenced this action asserting claims pursuant to 42 U.S.C. § 1983 and New York State common law challenging Insmed's refusal to support her application.  Cacchillo moved for a preliminary injunction requiring Insmed to:

(1) "provide to Angeline Cacchillo a written statement directed to the United States Food and Drug Administration . . . in a form customary for such submissions supporting the 'compassionate use' of . . . IPLEX for Angeline Cacchillo, stating that Insmed, Inc. will, without reservation, provide Angeline Cacchillo the medication IPLEX at cost upon the granting of her compassionate use application by the FDA;" and (2) "directing Insmed, Inc., in the event that Angeline Cacchillo's application is granted by the FDA, to provide Angeline Cacchillo IPLEX . . . ."

Insmed opposed the motion, arguing, among other things, that Cacchillo lacked standing to pursue a preliminary injunction because her injury cannot be redressed when the remaining stores of IPLEX have already been committed to ALS patients.  The district court agreed and denied Cacchillo's motion.

On appeal, Insmed contends that Cacchillo cannot establish either standing or ripeness to pursue a preliminary injunction.  We disagree, but nevertheless affirm the district court's opinion on the ground that Cacchillo has not shown that she is likely to succeed on the merits.[1]

---

[1] Cacchillo's standing to pursue her additional claims and pleas for relief has not yet been considered by the district court and is not before us on appeal.  *See* 28 U.S.C. § 1291.

**Discussion**

**A.   Standing**

Generally, "[s]tanding is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 442 U.S. 490, 498 (1975)).  In particular, "a plaintiff must demonstrate standing for each claim and form of relief sought."  *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003).  Thus, in order to seek injunctive relief, a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability.  *Summer v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009) (citation omitted).  We review the legal questions of whether a plaintiff has standing *de novo*.  *Shain v. Ellison*, 356 F.3d 211, 214 (2d Cir. 2004).

A plaintiff's burden to demonstrate standing increases over the course of litigation.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the

successive stages of the litigation." *Id*. When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing "will normally be no less than that required on a motion for summary judgment." *Lujan v. Nat'l Wildlife Fed'n (Lujan I)*, 497 U.S. 871, 907 n.8 (1990). Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot "rest on such 'mere allegations,' [as would be appropriate at the pleading stage] but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (internal citation omitted).

Here, Cacchillo's injury in fact is that in breach of an alleged agreement between herself and Insmed, she has not received Insmed's support in preparing her compassionate use application. As set forth in Cacchillo's affidavit, this injury is concrete and particularized: Cacchillo seeks a specific document from Insmed that she contends is required for her compassionate use application. This injury is actual, and not conjectural or hypothetical, because Cacchillo does not have the document to which she currently claims entitlement. Insmed's lack of support is no less an

injury because Cacchillo additionally hopes to receive both Insmed's support and, ultimately, FDA approval.

Cacchillo's injury is unquestionably caused by Insmed. Cacchillo does not have a document from Insmed because Insmed has declined to provide it.

Finally, Cacchillo's injury is redressable because she seeks relief directly from Insmed that is within the court's authority to order. *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (defining redressability as an inquiry asking whether "it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit" (some internal quotation marks omitted)). *Cf*. *Allen v. Wright*, 468 U.S. 737, 758 (1984) (finding redressability lacking where it was "entirely speculative" whether respondents' desired remedy – an injunction against the IRS – would remedy their alleged injury – failure of their children to receive a desegregated public education). Here, the court could redress Cacchillo's injury directly by ordering specific performance on the alleged underlying contract. That is, the court could redress Cacchillo's failure to receive the document from Insmed by ordering Insmed to provide her with the document.

In opposition, Insmed argues that Cacchillo's injury is not redressable because the court cannot order Insmed to provide Cacchillo with a document stating that Insmed will provide her with IPLEX when all of the remaining IPLEX has already been promised to ALS patients.  Yet, whether Insmed has any unallocated IPLEX or whether Cacchillo's claim to IPLEX supercedes that of the ALS patients are both questions that go to the merits of Cacchillo's claims, not her standing to bring those claims.  If we accepted Insmed's invitation to view the alleged unavailability of IPLEX as a barrier to redressability, then Insmed's mere assertion that it cannot supply IPLEX would deprive the court of jurisdiction to assess the validity of Insmed's defenses. Redressability does not permit us to wade so deeply into the merits.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (explaining that the "nonexistence of a cause of action [is not a] proper basis for a jurisdictional dismissal").

Based on the foregoing, Cacchillo has standing to pursue her motion for a preliminary injunction.

**B.   Ripeness**

Insmed also contends that Cacchillo's claims are not ripe.  We disagree.

Ripeness "is peculiarly a question of timing." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). A claim is not ripe if it depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id*. at 580-81.

In addition to requiring a commitment from Insmed to supply her with IPLEX if her compassionate care application is approved, Cacchillo's compassionate care application requires a physician to agree to act as Cachillo's sponsor and investigator. *See* 21 C.F.R. §§ 312.3 (defining "sponsor" and "investigator"), 312.305 (setting forth the current requirements for a compassionate use application). Insmed argues that Cacchillo's claim is not ripe because she does not have a sponsor or investigator. Yet, Cacchillo avers in her Complaint that two doctors are "ready and eager to commence and support [her] compassionate use application." Insmed has produced no evidence to the contrary. As a result, Cacchillo's claim for a preliminary injunction is ripe for our consideration.

**C. Merits Analysis**

Although the district court denied Cacchillo's motion

for lack of standing, we may affirm its decision "on any ground supported by the record."[2] *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004).

A party seeking a preliminary injunction must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). The burden is even higher on a party like Cacchillo that seeks "a mandatory preliminary injunction that alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo." *Id.* at 35 n.4 (internal quotation marks omitted). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where

---

[2] In light of the unusual facts of this case, the parties pressed the Court at oral argument to consider Cacchillo's entitlement to a preliminary injunction rather than remand the case to the district court.

extreme or very serious damage will result from a denial of preliminary relief." *Id*. (internal quotation marks omitted).

Here, even assuming Cacchillo has established that she will suffer irreparable harm, she has not met her burden to show that she has a likelihood of success on the merits. Cacchillo's claims hinge on Insmed's alleged promise to support Cacchillo's compassionate care application. Yet, Cacchillo has no evidence that such an agreement existed beyond her own vague recollection. Cacchillo has not described in any detail what exactly Insmed allegedly promised her; Cacchillo asserts only that (1) on its webpage, "Insmed stated that it supported clinical trial subjects' compassionate use applications;" and (2) a clinical research coordinator not employed by Insmed "told [Cacchillo] that Insmed would support [Cacchillo's] application."

Cacchillo's description of the alleged agreement is problematic for at least three reasons. First, Cacchillo's recollection of the contents of Insmed's website is belied by Insmed's exhibits showing that its website contained no

such statements.  Second, Cacchillo offers no theory of agency by which the clinical research coordinator's alleged statement would be binding upon Insmed.  *See* Restatement (Second) of Agency § 27 cmt. b (explaining that only a principal's acts – and not those of an agent – may create apparent authority).   Third, Cacchillo's vague descriptions of the alleged agreement, without more, strongly suggest that Cacchillo is not likely to establish that Insmed agreed to support her compassionate use application even if, as happened in the present case, Insmed concluded that the drug at stake is ineffective and better allocated to other patients.

Based on the foregoing, Cacchillo has not met her burden to establish that she is entitled to a mandatory preliminary injunction.

**Conclusion**

For the foregoing reasons, the order of the district court is hereby **AFFIRMED.**