*Miller v. Lamanna*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2024

Argued: June 10, 2025      Decided: March 9, 2026

Docket No. 24-2314-cv

JAMES MILLER,

*Plaintiff-Appellant,*

— v. —

JAMIE LAMANNA, GAIL WILLIAMS, JEROME INNIS, JOHN SHIPLEY, MICHAEL CORDAY, TRACY OBRYAN, MICHELE BLAIR, VISHNU LIMAYE, THOMAS MCGUINNESS, EDWARD BURNETT, KELLY AHEARN,

*Defendants-Appellees.*[*]

B e f o r e :

LYNCH, SULLIVAN, and MENASHI, *Circuit Judges.*

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform to the caption above.

Plaintiff-appellant James Miller, a former corrections officer of the New York State Department of Corrections and Community Supervision ("DOCCS"), sued several supervisory employees at DOCCS, alleging that they discriminated against him on the basis of race, and retaliated against him when he complained of that discrimination, in violation of his rights under the Equal Protection Clause. After two years of discovery, defendants-appellees moved for summary judgment. In their motion, in addition to arguing that the entire record failed to demonstrate the existence of material issues of fact about Miller's constitutional claims, defendants also argued that Miller's complaint should be dismissed for failure to state a claim. The district court (Nelson S. Román, *J.*) disregarded the parties' factual arguments based on the summary judgment record, and dismissed Miller's claims under Rule 12(b)(6), after having considered only the allegations in the complaint. Miller now appeals that dismissal. Because the district court erred by converting defendants' motion for summary judgment into a motion to dismiss and dismissing Miller's claims only on the basis of the insufficiency of the allegations in his complaint, we **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

Judge SULLIVAN dissents in a separate opinion.

––––––––––

MICHAEL H. SUSSMAN, Sussman & Goldman, Goshen, NY, *for* Plaintiff-Appellant.

JOSHUA R. FRIEDMAN, LaMarche Safranko Law PLLC, Cohoes, NY, *for* Defendants-Appellees.

––––––––––

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-appellant James Miller, a former corrections officer at the New

York State Department of Corrections and Community Supervision ("DOCCS"),

sued several supervisory employees at DOCCS, alleging principally that they violated his rights under the Equal Protection Clause by discriminating against him on the basis of his race and retaliating against him for complaining of such discrimination.

Following extensive discovery, defendants-appellees moved for summary judgment, arguing both that Miller's complaint failed to state a claim for discrimination and that the summary judgment record did not create a genuine dispute as to any material fact. The district court (Nelson S. Román, *J.*) dismissed the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"). *See Miller v. Ahearn*, No. 20-cv-2950, 2024 WL 3876378, at *2–5 (S.D.N.Y. Aug. 20, 2024). In doing so, the court considered only the allegations in Miller's complaint and disregarded the arguments that the parties had raised based on evidence in the summary judgment record. *See id.* By converting defendants' motion for summary judgment into a motion to dismiss, the district court exceeded its discretion. Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

The record on appeal reflects that, in the district court, the parties vigorously disputed the facts underlying Miller's lawsuit, with defendants arguing that Miller had not presented sufficient evidence to raise any question of fact for trial and Miller contending that the evidence would permit a reasonable jury to decide the case in his favor. On appeal, however, the parties largely ignore the factual record. In fact, both parties explicitly state that they have provided only a partial account of their record-based summary judgment arguments. The parties instead principally dispute whether the district court abused its discretion by dismissing Miller's complaint for failure to state a claim, even though discovery had been completed and defendants had moved for summary judgment. We therefore broadly summarize the facts underlying Miller's substantive claims only to give context to the dispute, drawing on the summary factual statements in the parties' appellate briefing.

## I.    Factual Background

Miller, an African American man, began working as a corrections officer for DOCCS in 2005 and was assigned to the Downstate Correctional Facility ("Downstate") at all times relevant to this action. Defendants include various

executive team members and superior officers at Downstate and officials at DOCCS's Central Office. Miller worked for DOCCS until he was fired in the summer of 2020.

Miller principally alleges that during the last three years of his tenure, defendants engaged in racially discriminatory and retaliatory actions that violated his rights under the Equal Protection Clause. In his appellate briefing, Miller focuses on three discrete instances of alleged racial discrimination, each of which defendants contest.

First, Miller asserts that defendants discriminated against him when they denied his two requests for permission to obtain outside employment—one in April 2018 and another in July 2018—but approved, during the same period, similar requests submitted by white officers. Defendants contest those allegations, asserting that the evidence demonstrates that they rejected Miller's requests because he purportedly had been late to work several times. Defendants also assert that they denied one of the requests because Miller included insufficient information in the request about the nature of the outside employment. Miller argues that, because the record does not reflect that he had time and attendance issues or that defendants sought further information from

5

him about the outside employment, defendants' reasons for denying his requests are pretextual.

Miller next asserts that defendants racially discriminated against him when they suspended him without pay in December 2018 for an altercation with another corrections officer, even though, at the same time, defendants allegedly paid three white officers (two corrections officers and one sergeant) who were suspended and under federal investigation for beating an inmate. Defendants argue that Miller's Equal Protection claim based on that allegation must fail because he did not provide sufficient evidence that he and the three white officers suspended with pay were similarly situated.

Finally, Miller alleges that defendants unlawfully retaliated against him by prohibiting him from returning to work after he submitted a discrimination complaint with the Equal Employment Opportunity Commission and a workplace violence complaint, reporting a confrontation with one of his supervisors. Miller asserts that the supervisor yelled at him and made threatening gestures toward him after a meeting concerning Miller's alleged time-keeping issues. Miller subsequently filed a workplace violence report against the supervisor. Miller alleges that, shortly thereafter, he was directed to

6

meet with the same supervisor; that, in response to that directive, he suffered a panic attack and had to be hospitalized; and that, when he tried to return to work, he was barred from doing so. Defendants dispute that version of events. They contend that Miller was not allowed to return to work after the purported panic attack because he failed to attend a psychological examination "to determine his fitness to return to duty," which the relevant regulations require when a corrections officer leaves work because of a mental health incident. Appellees' Br. 14–15.

## II.     Procedural History

In April 2020, Miller filed the instant lawsuit against defendants, alleging violations of his rights under the Equal Protection Clause.[1] After defendants answered Miller's complaint in January 2021, the parties engaged in over two years of discovery. Following discovery, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules.

The summary judgment record in this case is extensive. In support of their motion, defendants submitted twelve declarations, over fifty supporting exhibits,

---

[1] Miller later amended his complaint as of right pursuant to Rule 15(a)(1). The term "complaint" as used in the remainder of the opinion refers to his amended complaint.

and a Local Rule 56.1 Statement, together totaling more than 700 pages. In opposition, Miller filed his own affidavit, supported by thirty-two exhibits; an affidavit by his attorney, supported by forty-four exhibits; and a counter Local Rule 56.1 Statement, together totaling over 1,000 pages.

Defendants raised several arguments in support of their motion for summary judgment. First, they argued that, although they had styled their motion as one for summary judgment, "the Court need not proceed to such [an] analysis" because Miller's "claims, as pled in the Amended Complaint, fail to state a claim upon which he may obtain relief." Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 5, *Miller v. Ahearn*, No. 20-cv-2950 (S.D.N.Y. Feb. 2, 2024), Dkt. No. 89, 2024 WL 6069081 (hereinafter "Defs.' Mot. Summ. J."). They argued that the district court should therefore review their motion under the Rule 12(b)(6) standard, which limits the court's factual review to the allegations in the plaintiff's complaint, *see Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 142 (2d Cir. 2022), and requires the "plaintiff to plead sufficient facts 'to state a claim to relief that is plausible on its face,'" Defs.' Mot. Summ. J. at 4–5, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On the basis of the pleadings alone, defendants then argued that Miller's complaint was

"entirely devoid of facts" that would support that (1) he was similarly situated to any of the white officers who allegedly received preferential treatment, (2) each defendant was personally involved in the alleged discrimination, and (3) defendants retaliated against him. *Id.* at 6–10.

In the alternative, defendants argued that if the district court decided that Miller's complaint was sufficient, they were nonetheless entitled to summary judgment because Miller failed to meet his prima facie burden of demonstrating that "he was subject to an adverse employment action" or that any "such adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 11–16.[2] To warrant summary judgment in their favor, defendants must demonstrate that "there is no genuine dispute as to any material fact and [that they are] entitled to judgment as a matter of law." *Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018) (internal quotation marks omitted). And to survive a defendant's motion for summary judgment, "the plaintiff can no longer rest on the complaint's allegations," but must instead "produce evidence showing the presence of a genuine issue [of material fact] . . .

---

[2] Defendants raised other arguments in support of their motion for summary judgment that are not relevant to this appeal.

9

that would warrant resolution by trial." *Lugo v. City of Troy*, 114 F.4th 80, 87–88 (2d Cir. 2024) (alterations adopted) (emphasis and internal quotation marks omitted). To meet that standard, defendants cited testimonial and documentary evidence beyond the pleadings that they produced in support of their motion for summary judgment. They also produced a Local Rule 56.1 statement of undisputed facts, which included extensive citations to the summary judgment record.

In opposition, Miller summarily asserted that, because defendants filed a motion for summary judgment, not a motion to dismiss, the court should apply the standards relevant under Rule 56, not those applicable under Rule 12(b)(6). He then argued, with some citations to evidence in the summary judgment record,[3] that there were genuine factual disputes precluding summary judgment in defendants' favor. More specifically, Miller argued that the evidence in the record was sufficient to permit findings that defendants were involved in at least

---

[3] Miller's opposition to defendants' motion for summary judgment is rife with citations to his complaint. Miller also supports his argument with citations to evidence in the summary judgment record. We decline to parse the extent to which each of Miller's claims is adequately supported by evidence in the summary judgment record, as opposed to the allegations in his complaint. As we explain below, we leave that task to the district court on remand.

10

some of the adverse employment actions against him and that similarly situated white officers were often treated differently than he was. He also responded, with citations to record evidence, to defendants' statement of undisputed facts, and filed his own counter-statement.

The district court granted defendants' motion. *See Miller,* 2024 WL 3876378, at \*1. In so doing, the court noted that although defendants' motion was styled as a motion for summary judgment, because they argued that the allegations in Miller's complaint failed to state a claim, it would "begin[] by analyzing [Miller's complaint] for sufficiency under Rule 12(b)(6)." *Id.* at \*1–2.

The court then proceeded to analyze Miller's disparate treatment and retaliation claims, with reference only to the allegations in Miller's complaint. The court concluded that Miller's complaint failed to adequately allege that he was mistreated when compared to similarly situated white colleagues, and that, in fact, some of his "allegations reveal[ed] that his supposed comparators were *not* similarly situated." *Id.* at \*3 (emphasis in original). The court also concluded that Miller's complaint was deficient because he "fail[ed] to allege that any of the [d]efendants personally violated his constitutional right to equal protection under the law." *Id.* at \*4. Finally, the court dismissed Miller's retaliation claim

11

because he failed to allege that defendants knew about the protected activity in which he had allegedly engaged and to "establish a causal connection between the protected activity and the mistreatment he faced." *Id.* at *5. On those bases alone, the district court dismissed Miller's complaint. It did not assess, or even reference, any evidence outside Miller's complaint, notwithstanding that defendants had styled their motion as one for summary judgment and both parties had raised factual arguments based on the summary judgment record.

Miller appeals, arguing principally that the court abused its discretion by converting defendants' motion for summary judgment into a motion to dismiss and declining to assess the parties' arguments based on the summary judgment record.

## DISCUSSION

"We review district court determinations undertaken to manage the litigation before the court for abuse of discretion. This includes the district court's decision in this case to apply a pleading standard instead of a summary-judgment standard, notwithstanding the completion of discovery . . . ." *Lugo*, 114 F.4th at 88 (internal citations and quotation marks omitted).

Miller is correct that the district court exceeded its discretion by converting

12

defendants' motion for summary judgment into a motion to dismiss. Seven days after the district court filed its decision in this case, we decided *Lugo*, which held that a district court commits procedural error when it "resolv[es] the question of standing—which was raised at the summary-judgment stage—under the standards applicable to a Rule 12 motion to dismiss on the pleadings." *Id.* at 90. That holding controls the outcome in this case. The able district judge acted without the benefit of our analysis in *Lugo*. In addressing the district court's actions, however, we must apply the law as it exists today. *See Parker v. Time Warner Entertainment Co.*, 331 F.3d 13, 20 (2d Cir. 2003).

In *Lugo*, the plaintiffs-appellants alleged that the City of Troy violated Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act of 1973 because it failed to keep the city's sidewalks and crosswalks accessible. 114 F.4th at 83–84. The complaint alleged two separate instances in which the plaintiffs sustained injuries while using their wheelchairs in specific areas of Troy; they also alleged, without reference to other specific locations, that Troy's sidewalks and crosswalks were generally inaccessible to them. *Id.* at 84. The parties conducted discovery for approximately two years, during which time the plaintiffs testified during depositions that the two specific obstacles that they

identified in their complaint had been remedied, but that they "encountered other specific accessibility obstacles around Troy." *Id.*

After the close of discovery, the City of Troy moved "to dismiss [p]laintiffs' complaint for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment." *Id.* at 85. Under Rule 12(b)(1), which allows for motions to dismiss for lack of subject matter jurisdiction, including for lack of constitutional standing, the motion "may be . . . fact-based," which means "the defendant can proffer evidence outside the pleadings to challenge the plaintiff's allegations of standing." *Id.* at 87. To support its 12(b)(1) motion, the City of Troy pointed to plaintiffs' deposition testimony that the two specific obstacles identified in the complaint had been remedied. *Id.* at 88. And to support its motion for summary judgment, Troy argued that nothing in the summary judgment record as a whole, which "includ[ed] [p]laintiffs' deposition testimony identifying additional accessibility obstacles throughout Troy," "otherwise established [p]laintiffs' standing." *Id.* at 85, 88.

The district court granted the defendant's motion, holding that the complaint did not establish plaintiffs' standing. *Id.* at 85. In so deciding, "the

14

district court largely ignored the summary-judgment record. It considered only whether the *allegations* of standing in [p]laintiffs' complaint satisfied the pleading standards . . . ." *Id.* at 88–89 (emphasis in original). Also, although the district court "declined to credit the alleged obstacles in the complaint," in part "because [p]laintiffs' deposition testimony showed that they had been remedied," the court "failed to consider . . . whether other evidence outside the pleadings might suffice to establish [p]laintiffs' standing." *Id.* at 89.

We concluded that the district court's failure to consider the summary judgment record "was procedural error." *Id.* We reasoned that although Rule 12(d) of the Federal Rules allows district courts to convert a motion to dismiss into a motion for summary judgment if the motion to dismiss references matters outside the pleadings, the Federal Rules "offer no support for the sort of reverse Rule 12(d) conversion that the district court undertook." *Id.* at 88–89 (internal quotation marks omitted). We explained that the Federal Rules are designed to ensure "the just, speedy, and inexpensive determination of every action and proceeding," *id.* at 88, quoting Fed. R. Civ. P. 1, and that "a reverse Rule 12(d) conversion will rarely (if ever) help to secure [those aims]," *id.* at 89 (internal quotation marks omitted). We then articulated several reasons why that is the

15

case.

We focused first on the waste that a reverse Rule 12(d) conversion would create. Rule 12(d) conversions help to efficiently and justly resolve cases because such conversions typically occur at the beginning of the case, before any discovery has been conducted, and focus on resolving issues that are "'likely to facilitate the disposition of the action' on the merits," based on an evidentiary record that is focused on the dispositive issues. *Id.* at 88, quoting *Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1059 (9th Cir. 2023). Reverse Rule 12(d) conversions, on the other hand, "disregard[] the more robust procedural device the parties have invoked to frame the issue and thus unjustifiably ignore[] the fuller evidentiary record" that the parties have invested significant time and resources to develop during discovery. *Id.* at 89 (internal quotation marks omitted).

A reverse Rule 12(d) conversion would also, we explained, nullify the aims of "[t]he different standards generally applicable to motions to dismiss and for summary judgment." *Id.* "[T]he pleading standard acts as a screening mechanism in the early stages of the litigation[,] . . . clos[ing] the doors of discovery to plaintiffs armed with nothing more than conclusions." *Id.* (internal quotation

16

marks omitted). It does so, we explained, by "requir[ing] a plaintiff's complaint to allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the defendant's wrongdoing." *Id.* (internal quotation marks omitted). "But once the parties have already incurred the expense of discovery," as plaintiffs and the City of Troy had, "that objective becomes inapposite." *Id.* (internal quotation marks omitted). We continued that, "[a]fter discovery, the summary-judgment standard typically applies, which requires the district court to review the evidence compiled by the parties during discovery to determine whether trial is actually required." *Id.* (internal quotation marks omitted). A reverse Rule 12(d) conversion would run directly contrary to those purposes. Such a conversion would impose a standard of review designed to discern whether discovery is necessary to a motion filed after the parties had already completed discovery. *See id.*

Finally, we explained that "the administration of justice is best served when the district court applies the standards that are appropriate for the pertinent motion and stage of litigation." *Id.* "Suppose," we proposed, "that the summary judgment record shows that the plaintiff has raised sufficient evidence of standing to allow—or even to compel—a trier of fact to find in its favor on

17

standing." *Id.* (alterations adopted) (emphasis and internal quotation marks omitted). "In *that* situation, dismissing the case based on . . . pleading deficiencies in the complaint's factual allegations seems difficult to justify . . . [because] the fruits of discovery would have revealed that the pleading deficiency is curable." *Id.* (alterations adopted and emphasis in original) (internal quotation marks omitted). We further pointed out that "[t]he risk of error was compounded . . . because Troy . . . did not object to the adequacy of [p]laintiffs' pleadings until the summary-judgment stage." *Id.* "Had Troy done so earlier," we explained, "any deficiencies in [p]laintiffs' complaint presumably could have been cured before the allotted time to amend the pleadings expired." *Id.* (internal quotation marks omitted).[4]

For those reasons, we held that "the district court erred in resolving the question of standing—which was raised at the summary-judgment stage—under the standards applicable to a Rule 12 motion to dismiss on the pleadings." *Id.* at

---

[4] Under Rule 15 of the Federal Rules, "[a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "[t]he court should freely give when justice so requires." *Id.* 15(a)(2).

90.

All the reasons that persuaded us in *Lugo* to conclude that the district court committed procedural error when it converted the defendant's motion for summary judgment into a motion to dismiss apply with equal force in this case. Here, defendants styled their motion as one for summary judgment, but the district court treated it as a Rule 12(b)(6) motion. In so doing, the district court, like the district court in *Lugo*, ignored the evidence that the parties had compiled during over two years of discovery and wasted the time, effort, and resources that both the parties and the court had expended over that time.

The district court's reverse Rule 12(d) conversion also failed to serve the administration of justice. As noted above, in opposing summary judgment, Miller cited evidence in the summary judgment record that he maintained supported his argument that there were genuine disputes of material fact, which he believed warranted scrutiny by a jury. Those are arguments that the district court should have assessed; instead, it ignored them. Even if Miller's complaint was conclusory, the record evidence he cited may have fleshed out his allegations. It is also possible, of course, that such evidence would not have cured the purported deficiencies in his complaint. But, by ignoring Miller's summary

19

judgment arguments altogether, the district court risked erroneously dismissing his claims on the basis of the conclusory nature of the complaint's allegations, even though they may have been supported by evidence in the summary judgment record.

Moreover, as in *Lugo*, the risk of error was compounded because defendants did not object to the adequacy of Miller's pleadings until the summary judgment stage. Had defendants objected earlier, Miller's complaint "presumably could have been cured," *id.* at 89 (internal quotation marks omitted), as he could have sought leave to amend his complaint for a second time under Rule 15(a)(2).[5] Or, if Miller was then unaware of facts that could have been cited to render plausible the conclusory allegations in the complaint, the case could have been dismissed at that stage without a further expenditure of resources.

Despite defendants' assertion to the contrary (which is adopted by our dissenting colleague), *Lugo* is not distinguishable because it involved "a fact-based challenge to the [plaintiffs'] . . . standing, rather than a challenge to whether the factual allegations [in] the [complaint] sufficed to state a claim upon

---

[5] *See* supra n.1.

which relief could be granted at trial." Appellees' Br. 6. As with a plaintiff's substantive claims, a plaintiff's burden to demonstrate standing differs based on which stage in the litigation the challenge to standing is raised. "At the pleading stage, the plaintiff must clearly allege facts in his complaint demonstrating each element of standing," and "[t]o survive a . . . motion to dismiss, the complaint's factual allegations of standing must be plausible and nonconclusory." *Lugo*, 114 F.4th at 87 (alterations adopted) (internal quotation marks omitted). The burden is the same for a plaintiff facing a motion to dismiss for failure to state a claim. *See Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018) ("To survive a motion to dismiss [pursuant to Federal Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And, at the summary-judgment stage, "a district court [may] enter judgment on a claim or defense, including on standing, if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Lugo*, 114 F.4th at 87 (internal quotation marks omitted). The same standard applies when a defendant moves for summary judgment on a plaintiff's substantive claims. *See Hancock*, 882 F.3d at 64 ("[S]ummary judgment may be granted only if there is no genuine dispute as to

21

any material fact and the movant is entitled to judgment as a matter of law.").

Accordingly, that the motion in *Lugo* attacked the plaintiffs' standing, rather than their substantive claims, is not a persuasive basis upon which to distinguish defendants' motion in this case.

Nothing in *Lugo* suggests that our reasoning was specific to cases in which the issue on which summary judgment or dismissal was sought involved standing. To the contrary, the language quoted above relied on the standard for granting summary judgment on *an*y "claim or defense, *including* on standing." *Lugo*, 114 F.4th at 87 (emphasis added) (internal quotation marks omitted).[6]

---

[6] The dissent amplifies defendants' argument by pointing to the importance of standing, as a constitutional jurisdictional matter and "no[] mere pleading requirement," Dissent at 6, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561(1992), such that the "plaintiff's burden to demonstrate standing increases over the course of [the] litigation," *id*., quoting *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). Indeed, that is true. But it is also true that the plaintiff's burden to allege and prove facts also increases over the course of the litigation. At pleading, the plaintiff's burden is merely to allege sufficient concrete facts to "nudge[] their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570; at summary judgment, those allegations must be backed by sufficient actual "evidence . . . such that a reasonable jury could return a verdict for the [plaintiff]," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In both cases, the burden on the plaintiff increases, so the fact that *Lugo* involved a question of standing does not distinguish it from this case.

The question here is not about what burden the *plaintiff* bears to avoid summary judgment—plaintiff agrees that he must now do more than allege facts that render his claim plausible, by adducing evidence sufficient to raise genuine

22

Nor do the two Second Circuit cases that defendants cite for the proposition that "it is not error for a court to grant summary judgment based upon the facial insufficiency of the complaint's allegations" warrant a different conclusion. Appellees' Br. 6 (emphasis omitted). Both cases were decided well

---

issues of fact, and contends that he can and does carry that burden—but rather about whether the *defendant* can ignore the evidence to which plaintiff points and win the case by reverting to the pleading stage, obtaining a dismissal because the complaint was, as a matter of pleading, insufficient.

To the extent that standing is the more fundamental requirement, that distinction, if anything, cuts the other way. If the allegations of the complaint were inadequate from the beginning to establish standing, the defect goes to the court's jurisdiction, and the court was obligated to assure itself of its jurisdiction *sua sponte*, even in the absence of a motion or objection from the defendant. It is arguable that in that situation, the court had no power to hear the case at all, and that as a result the defendant at any stage of the proceeding should be able not merely to *raise* the jurisdictional question, but to revert to the question of whether the pleading permitted the case to proceed. *Lugo* nevertheless held that the district court was required, post-discovery, to assess the jurisdictional question based on the facts then in the record and not only to reject standing, if the plaintiff was unable at summary judgment to support allegations in the complaint that were *sufficiently* well-pled, but also to find it, even it might have in retrospect been lacking at the beginning.

It should follow *a fortiori* that, as to a pleading defect going to the merits, an issue on which the court may proceed to discovery in the absence of a motion to dismiss, if the plaintiff can now bear the heavier burden imposed at the summary judgment stage, the court cannot ignore the actual evidence and dismiss a case that must be tried because, in hindsight as a result of evidence ascertained during discovery, the plaintiff's complaint has become conclusory. While a complaint's allegations are, absent amendment, frozen in time, a plaintiff's claims are not.

23

before *Lugo* and are, in any event, distinguishable. In *Schwartz v. Compagnie General Transatlantique*, the defendant, French Line, filed a third-party complaint against the United States seeking indemnity for a tort lawsuit brought by a United States immigration inspector who was injured while aboard one of French Line's ships. 405 F.2d 270, 272 (2d Cir. 1968). The United States moved for summary judgment, and the district court dismissed the third-party complaint for failing to state a cause of action. *Id.* at 272–73. We concluded that the district court's dismissal was not error because the United States' motion for summary judgment was "functionally the same as a motion to dismiss or a motion for judgment on the pleadings." *Id.* at 273 (internal quotation marks omitted). We noted that neither party "sought judgment on any factual issue with regard to liability of the French Line to [the immigration inspector]," and that "[t]he French Line failed to present on the record any evidence indicating the existence of a genuine issue of material fact as to its claim against the United States." *Id.* Instead, French Line "confine[d] its argument to its contention that the complaint state[d] a cause of action." *Id.* Here, on the other hand, as we explained, Miller relied on the summary judgment record to argue that there were genuine disputes of material fact, and he did not confine his arguments to the allegations

in his complaint. Similarly, defendants' arguments principally addressed the factual insufficiency of the allegations of the complaint (as well as whether the evidence in the summary judgment record created genuine disputes of material fact) and did not rest on purely legal questions. *Schwartz* is, therefore, distinguishable.

*Eastway Construction Corporation v. City of New York*, the other case that defendants cite, is also inapposite. In that case, a general contracting firm, frustrated when its attempts to work with New York City on redevelopment projects were unavailing, filed an action against New York City claiming that the City's decision not to do business with it violated its civil rights and antitrust laws. 762 F.2d 243, 245–46 (2d Cir. 1985). Prior to discovery, defendants moved to dismiss the complaint for failure to state a claim, or in the alternative, for summary judgment. *Id.* at 248. After a hearing on defendants' motion and after considering "affidavits and other supporting data," the district court granted the motion and denied plaintiff's request for discovery. *Id.* (internal quotation marks omitted). We affirmed the grant of summary judgment on both claims, but remarked that "it would have been equally proper to dismiss the civil rights [and antitrust] count[s] for failure to state a claim, pursuant to Rule 12(b)(6)." *Id.* at

25

250–51.

That dictum does not support defendants' argument in this case. Here, there was a large summary judgment record, and Miller asserts, with citation to the summary judgment record, that there are various disputed questions of fact. But in *Eastway*, the defendant moved for summary judgment *prior to* discovery, *id.* at 248, and the issues on the motions involved questions of law, which did not require factual development to resolve, *id* at 249–51 (explaining that, as it related to the civil rights claim, the only property interest that plaintiff alleged was its desire to be involved in "publicly-financed projects," which as a matter of law, could not "rise to the level of a property interest," and that, as to the antitrust claim, plaintiff failed to allege a harm cognizable under antitrust law).

Finally, during oral argument, defendants argued that the district court did not err when it resolved their motion for summary judgment under the pleading standards because the Federal Rules allow defendants to raise a defense for failure to state a claim after the pleadings close. And indeed, under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party

may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[7] "The standard

for granting a Rule 12(c) motion for judgment on the pleadings is identical to that

for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA*

*Investment Advisory Group, Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (internal quotation

marks omitted).

---

[7] Relying on *McCracken v. Verisma Systems, Inc.*, 91 F.4th 600 (2d Cir. 2024), and *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2d Cir. 2011), the dissent similarly contends that, following Rule 12(c)'s plain language, courts "have routinely granted . . . Rule 12(c) motions that were filed after the close of discovery." Dissent at 4. Neither case helps distinguish *Lugo*.

In *McCracken*, following intervening case law from the New York Court of Appeals that barred plaintiffs' claims, we held that the district court did not err by refusing to convert a motion for judgment on the pleadings into one for summary judgment. 91 F.4th at 604–05, 609. But, as explained below, the facts here are different: The district court in effect converted defendants' motion for summary judgment into a Rule 12(b)(6) motion, when that is not the motion that defendants filed. Moreover, the *McCracken* plaintiffs' claims suffered from a fatal *legal* defect—the claims were barred as a matter of New York law—so, just as in *Schwartz* and *Eastway*, evaluating the record would have made no difference. *Id.* at 609. Indeed, in those circumstances, considering only the pleadings was "an exercise of efficiency." *Id.*

And despite the dissent's citation to *Ideal Steel*, that case supports the majority's view. We concluded there that the district court erred in dismissing the plaintiff's complaint pursuant to Rule 12(c) when the evidence in the record "fill[ed] the perceived gaps in the [c]omplaint." *Ideal Steel*, 652 F.3d at 325. Accordingly, we held that "the district court's focus solely on the allegations [in] the [c]omplaint, given the posture of th[e] case," long past "the point of minimum expense," "misappli[ed] . . . *Twombly*" and the Federal Rules. *Id.*

The Federal Rules allow defendants to move to dismiss the complaint after the pleadings close, but defendants in this case did not so move. Rather than filing a Rule 12(c), or even a belated Rule 12(b)(6), motion, defendants styled their motion as one for summary judgment. As we have explained, that type of motion carries with it particular standards "tailored to addressing the unique considerations that arise" after discovery has closed and the factual record has been developed. *Lugo*, 114 F.4th at 89. We cannot expect Miller to have responded to defendants' arguments that the district court should dismiss Miller's complaint for lack of sufficiency by referencing only the allegations in his complaint. The parties had conducted over two years of discovery with the aim of substantiating, or debunking, those allegations. Miller's decision to respond to defendants' motion for summary judgment, including defendants' arguments that his complaint was legally insufficient, with reference to the full bevy of evidence available to him at that stage of the proceeding, therefore, makes good sense. Even if the allegations in the complaint were insufficiently detailed to survive a motion to dismiss had such a motion been made before discovery, if the evidence collected in discovery raised triable issues of fact, it would have been appropriate

28

for Miller to amend his complaint to conform to the evidence thus collected.[8]

Dismissing the complaint at that stage, when the evidence adduced in discovery may have been sufficient to survive a summary judgment motion, would hardly serve the efficient or just resolution of disputes, which is the very foundation of the Federal Rules. *See* Fed. R. Civ. P. 1 (directing that the Federal Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

Finally, even if defendants had styled their motion as one under Rule 12(c), it would not have been appropriate for the district court to dismiss Miller's complaint for failure to state a claim. As we have explained, the parties dispute facts relevant to the disposition of Miller's claims, and "where a question of fact is in dispute, it is improper for the district court to answer it on a motion for dismissal on the pleadings." *Lively*, 6 F.4th at 301 (alterations adopted) (internal

---

[8] Under Rule 15(b) of the Federal Rules, parties may generally amend their pleadings at trial, or even after judgment, to conform to the evidence presented. *See Ostano Commerzanstalt v. Telewide Systems, Inc.*, 880 F.2d 642, 646 (2d Cir. 1989) ("[T]he well-known objective of [Rule 15(b) is] that cases should be decided on resolution of the actual dispute between the parties, rather than on the paper pleadings filed at the inception of suit."), quoting *SEC v. Rapp*, 304 F.2d 786, 790 (2d Cir. 1962). In other words, the law does not evince over-concern, especially at later stages of a case, with reverting to the original pleadings when the actual evidence is sufficient to establish a claim or defense later on.

quotation marks omitted). Moreover, once discovery has been completed, as here, "we do not regard [the pleading standard] as requiring that defendants' Rule 12(c) motion be granted if evidence that had already been produced during discovery would fill the perceived gaps in the [c]omplaint." *Ideal Steel*, 652 F.3d at 325. The district court, therefore, still would have had to analyze the factual record to determine whether a dismissal under Rule 12(c) was warranted.

That does not, of course, mean that the court must assess the factual record if the claim raised in the complaint suffers from a fatal *legal* defect. Imagine, for example, that a plaintiff seeks damages allegedly suffered because the defendant violated a federal statute, but that statute does not create an express or implied private right of action. Suppose also that the defendant failed to raise that legal defense at the pleading stage. It is of course true that no fact uncovered in discovery into whether the violation actually occurred can remedy the defect in the plaintiff's complaint, and the defendant can raise the legal issue with the plaintiff's complaint at any time, including after discovery and in connection

with a summary judgment motion, however that motion is styled. As discussed above, that is essentially the lesson of *Schwartz*.[9]

But that is not this case. Here, defendants do not argue that the claims plaintiff raised in his complaint, and that he now says he has evidence sufficient to prove, cannot support recovery as a matter of law. Rather, defendants argue that plaintiff's complaint failed to support his (legally cognizable) causes of action with sufficiently concrete factual allegations to meet the pleading standard set by *Twombly*. If plaintiff is correct that he can now meet not only that pleading standard, but the more demanding summary judgment standard, *Lugo* requires the district court to assess the sufficiency of plaintiff's case on the basis of what the record shows the evidence to be.

---

[9] For that reason, the dissent's somewhat overheated rhetoric charging us with somehow rewriting the Federal Rules misses the mark. Even putting aside the fact that the dissent's quarrel is really with the binding precedent of *Lugo*, neither that case nor our opinion in this one holds that a defendant may not challenge the legal sufficiency of the claim made by the plaintiff by a motion, whether styled a Rule 12(c) motion or a Rule 56 motion. In doing so, we interpret the rules as Rule 1 instructs us to "construe[], administer[], and employ[]" them: "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

Ultimately, given that the parties in this case compiled a substantial factual record through a lengthy period of discovery, defendants styled their motion as one for summary judgment, and the parties vigorously contested the facts underpinning Miller's claims, we conclude that the district court committed procedural error when it analyzed defendants' motion for summary judgment under the Rule 12(b)(6) standard.

We express no opinion on whether the record evidence that Miller has presented is sufficient to survive defendants' motion for summary judgment. "[G]enerally[,] we decline [to] consider[] arguments not addressed by the district court," *Bacolitsas v. 86th & 3rd Owner, LLC*, 702 F.3d 674, 681 (2d Cir. 2012), and here, the district court did not pass on the parties' summary judgment arguments. Moreover, as noted above, both sides expressly characterized their discussion of those arguments in their appellate briefs as mere sketches of their positions. It may be the case that the record evidence does not support Miller's allegations in a meaningful way and that, as a result, there is no genuine dispute as to any material fact.[10] That determination, however, is for the district court to

[10] Similarly, defendants might be entitled to summary judgment based on one of the affirmative defenses raised in their summary judgment motion below but not discussed by the parties on appeal. *See supra* n.2.

make in the first instance. Such was the case in *Lugo*, where, having held that the district court erred in resolving a question that was raised in a summary judgment motion under the pleading standards, we remanded for the district court to resolve that question under the summary judgment standard in the first instance. 114 F.4th at 90. We conclude only that, for the reasons we articulated in *Lugo*, the district court committed procedural error when it converted defendants' motion for summary judgment into a motion to dismiss.

## CONCLUSION

We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, we **VACATE** the judgment of the district court, and **REMAND** the case for further proceedings consistent with this opinion.

RICHARD J. SULLIVAN, *Circuit Judge*, dissenting:

I do not agree that the district court committed procedural error in granting a judgment on the pleadings to Defendants. Regardless of how the motion was styled or whether discovery had already concluded, the Federal Rules of Civil Procedure expressly permit a party to challenge the facial sufficiency of the pleadings any time "after the pleadings are closed" – so long as such a motion is made "early enough not to delay trial." Fed. R. Civ. P. 12(c). Rule 12(h)(2) likewise provides that a party may assert a defense for "[f]ailure to state a claim upon which relief can be granted" "by a motion under Rule 12(c)." The majority ignores the plain text of the Federal Rules to adopt what it regards as a more efficient litigation regime. But rewriting the Federal Rules is a job for the Judicial Conference of the United States, the Supreme Court, and, ultimately, Congress – not an individual panel of our Court. *See* 28 U.S.C. §§ 2071–2077. Nor does *Lugo v. City of Troy*, 114 F.4th 80 (2d Cir. 2024), compel the result reached by the majority today. Accordingly, I would affirm the district court's dismissal of Miller's claims.

The procedural history in this case is admittedly unusual. Although Defendants purported to make a motion for summary judgment pursuant to Rule 56, that motion included an argument focused on the deficiencies in Miller's

complaint.  *See* Sp. App'x at 5 (arguing that the complaint "relies chiefly upon speculative, conclusory allegations" and therefore "fails to state a claim upon which relief can be granted").  The district court, for its part, evaluated the motion as one seeking dismissal of the amended complaint for failure to state a claim under Rule 12(b)(6), even though the motion was made after the close of pleadings.  *Miller v. Ahearn*, 20-cv-2950 (NSR), 2024 WL 3876378, at *2–3 (S.D.N.Y. Aug. 20, 2024).

But even though the district court mischaracterized Defendants' motion as one filed under Rule 12(b)(6), there can be no doubt that Defendants had actually moved for a judgment on the pleadings pursuant to Rule 12(c).  The labels assigned to a party's motion are not dispositive, and we have long recognized that "a motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed . . . as a motion for judgment on the pleadings under Rule 12(c)."  *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 125–26 (2d Cir. 2001).  And since "[t]he same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings," *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010), the substantive analysis is the same.

The majority nonetheless insists that granting a judgment on the pleadings after the close of discovery is improper, as it would "nullify the aims of the different standards generally applicable to motions to dismiss and for summary judgment." Maj. Op. at 16. Eschewing the plain words of the Rules for an ethereal exploration of purpose, the majority muses that the pleading standard "acts as a screening mechanism in the early stages of litigation" and becomes "inapposite" once the parties have "incurred the expense of discovery" because "ignor[ing] the evidence that the parties had compiled during over two years of discovery" would waste the "time, effort, and resources that both the parties and the court had expended over that time." *Id.* at 16–19.

But the majority's notions of efficiency are of no moment and certainly do not override the plain language of the Federal Rules, which explicitly contemplate that a defendant may move for judgment on the pleadings *after* the close of discovery. *See Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning."). Rule 12(c) is a model of simplicity: it explains that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." *See* Fed. R. Civ. P. 12(c). And Rule 12(h) is hardly more complicated: after announcing

3

that certain defenses – including those "listed in Rule 12(b)(2)-(5)" – will be deemed waived if not made in a pre-answer motion or in the answer itself, subsection (2) clearly states that the defense of "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)[] or . . . at trial." Neither rule mentions discovery or even implicitly suggests that the close of discovery constitutes the horizon beyond which the right to make a motion for judgment on the pleadings disappears.

Given this plain language, it is hardly surprising that district courts have routinely granted – and we have affirmed – Rule 12(c) motions that were filed after the close of discovery. *See, e.g.*, *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 609 (2d Cir. 2024) (affirming district court decision to grant 12(c) motion filed after the close of discovery); *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011) (emphasizing that "whether the complaint states a claim upon which relief can be granted is a question of law, and that question may be raised even as late as the trial of the action" (quoting Fed. R. Civ. P. 12(h)(2)); *Bey v. City of New York*, 454 F. App'x 1, 4 (2d Cir. 2011) (finding no abuse of discretion where the district court concluded that a Rule 12(c) motion filed after the close of discovery was timely because a trial date had not been set); *Am. Trucking Ass'ns, Inc. v. N.Y. State*

4

*Thruway Auth.*, 238 F. Supp. 3d 527, 539 (S.D.N.Y. 2017) ("There is no hard-and-fast time limit on a Rule 12(c) motion under Rule 12(h)(2)."), *aff'd*, 886 F.3d 238 (2d Cir. 2018); *Liang v. City of New York*, 10–cv–3089 (ENV), 2014 WL 4966074, at *2–3 (E.D.N.Y. Oct. 3, 2014) (finding that a Rule 12(c) motion was timely even though it was filed after discovery was complete). The Supreme Court itself has recognized that "the objection that a complaint fails to state claim upon which relief can be granted" endures up to a trial on the merits. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006); *see also PDX N., Inc. v. Comm'r N.J. Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 880 (3d Cir. 2020) (holding that trial court did not abuse its discretion in considering a Rule 12(c) motion because no trial date had yet been set).

Because the Federal Rules unambiguously permit a court to consider a motion for judgment on the pleadings after discovery, the majority looks elsewhere for guidance. In particular, the majority relies on *Lugo*, which held that the district court erred in resolving a defendant's standing challenge as a pleadings motion instead of as a summary-judgment motion. *See* 114 F.4th at 85–86. The majority insists that "[n]othing in *Lugo* suggests that our reasoning was specific to cases . . . involv[ing] standing." Maj. Op. at 22. But nothing in *Lugo* suggests that the Federal Rules don't mean what they say. Read in context, *Lugo's* holding is

5

clearly limited to challenges involving a plaintiff's Article III standing to bring the case, not the sufficiency of the pleadings. This makes sense, since the Supreme Court has observed that the elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). We too have noted that "[a] plaintiff's burden to demonstrate standing increases over the course of litigation." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). At the pleading stage, "general factual allegations of injury resulting from defendant's conduct may suffice to establish standing," while at the summary-judgment stage, a plaintiff "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts," *Lujan*, 504 U.S. at 561; *see also Lugo*, 114 F.4th at 89 (emphasizing that "other evidence outside the pleadings" should be considered to analyze standing at the summary-judgment stage).

But this increasing burden is limited to standing challenges, and neither *Lugo* nor *Cacchillo* implies a comparable increasing burden for motions for judgments on the pleadings. This should hardly be shocking, since the Federal Rules expressly allow for such motions to be filed at any time "[a]fter the pleadings have closed" – so long as they do not delay the trial. Fed. R. Civ. P. 12(c). Other

6

circuits agree with this straightforward conclusion. *See, e.g.*, *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1131 (6th Cir. 1990) ("Fed. R. Civ. P. 12(c) provides that any party may move for a judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial." (internal quotation marks omitted)); *Carlson v. Reed*, 249 F.3d 876, 878 n.1 (9th Cir. 2001) ("A party may move for a judgment on the pleadings *at any point* after the pleadings close." (emphasis added)). And the standard applicable to pleading motions does not change as litigation progresses. *See Bank of New York*, 607 F.3d at 922.[1]

Here, Defendants did not contend that Miller failed to establish Article III standing. They instead argued that Miller's first amended complaint "relies chiefly upon speculative, conclusory allegations . . . and, thus, fails to state a claim upon which relief can be granted against any of the Defendants." *Miller*, 2024 WL 3876378, at *2 (internal quotation marks omitted). This is clearly an argument for

---

[1] The majority argues that even outside of the standing context, "a plaintiff's burden to allege and prove facts also increases over the course of the litigation" because the standards of proof differ at the pleading and summary judgment stages. Maj. Op. at 22 n.6. But Rules 12 and 56 serve different procedural functions – and characterizing these distinct mechanisms as a single, escalating "burden" erases the line between pleading and proof delineated by the Federal Rules. Rule 12 targets a deficiency in the pleadings itself and asks whether a complaint states a legally cognizable claim for relief. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1342 (4th ed. 2023). And Rule 56 targets the evidentiary sufficiency of a claim and asks whether there is sufficient admissible evidence in the record to permit a reasonable jury to find for the non-moving party. *See id.* § 2712.

7

judgment on the pleadings, not an argument challenging Miller's standing to bring this case. *Lugo*, therefore, has no bearing on this appeal.

Because there is no suggestion that Defendants' motion for judgment on the pleadings resulted in a delay of the trial – which was not even scheduled at the time the motion was made – it cannot be said that the district court erred in considering Defendants' motion for judgment on the pleadings based on Miller's failure to state a claim upon which relief could be granted. And since Miller's pleadings *were* in fact conclusory and threadbare, the district court properly dismissed the complaint and granted judgment to Defendants.[2]

\* \* \*

For all these reasons, I respectfully dissent from the majority's opinion and would affirm the district court's dismissal of Miller's claims.

---

[2] I agree with the majority that "*if* the evidence collected in discovery raised triable issues of fact, it would have been appropriate for Miller to amend his complaint to conform to the evidence thus collected." Maj. Op. at 28–29 (emphasis added). The Federal Rules expressly contemplate such a scenario and instruct district courts to "freely give [such] leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 551 (S.D.N.Y. 2022) (granting motion to file a Sixth Amended Complaint after new facts were discovered during discovery). But Miller made no such request below, even after Defendants explicitly challenged the sufficiency of the complaint. Even now, Miller does not explain how he would amend the complaint to state a plausible claim.

8